Henry GRIFFITH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–71.

Court of Criminal Appeals of Oklahoma.

March 4, 1987.

As Corrected March 31, 1987.

Johnie O'Neal, Asst. Appellate Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Henry Griffith, was charged in the District Court of Tulsa County, Case No. CRF–82–1766, with the offense of Murder in the First Degree. He was tried before a jury and convicted for the lesser included offense of Manslaugh-ter in the First Degree. Punishment was set at twenty (20) years imprisonment. We affirm.

In the Spring of 1982, appellant and his wife, Lorena Griffith, were living apart and involved in divorce procedings. Lorena was residing at a trailer home in Tulsa County with her three children. She already had begun dating—and apparently made plans to marry—Tommy Peters.

On May 14, 1982, at around 3:15 a.m., Peters and his friend, Steve Corley, went to Lorena's trailer. Soon after they arrived, Corley observed a tall man stooping over his pick-up truck. Peters retrieved a .22 caliber pistol and fired at the intruder, who was subsequently identified as the appellant. Corley and Peters discovered the tires on Corley's truck had been slashed.

Following this incident, and because Corley did not want to borrow Lorena's automobile, the pair elected to spend the remainder of the night at the trailer. Peters and Lorena retired to her bedroom, and Corley fell asleep on the couch. Corley was suddenly awakened about two hours later by a person outside the trailer who was calling for Lorena. Corley looked out and saw the appellant. Lorena came to the patio door, opened it a few inches, and spoke with the appellant. When Lorena refused to come outside, appellant fired two shotgun blasts through the patio door, and Corley ran out another door. As Corley was running away, he heard two or three more shotgun blasts, and heard Peters scream, "Oh, oh, oh." The State also presented evidence that Peters, upon hearing the initial shotgun blasts through the patio door, emerged from the bedroom carrying a Coke bottle. According to the State's evidence, appellant hit Peters in the head with the shotgun stock, and shot him three times. Peters died later that same day from gunshot wounds inflicted by the appellant.

Appellant was later arrested by authorities in Minnesota. He waived extradition proceedings, and was returned to Oklahoma for trial. Appellant raised a claim of self-defense, and testified he was attacked by Peters as he entered the trailer. He

claimed Peters struck him with a Coke bottle and shot at him with a pistol. He allegedly armed himself with the shotgun because Peters had purportedly made threats on his life, according to defense testimony.

## I.

In his initial assignment of error, appellant claims the trial court erred in allowing the admission of hearsay evidence. The alleged hearsay statements involved comments by Lorena Griffith soon after the shooting. We do not agree with appellant's assertion that the trial court committed reversible error.

Due to procedural complexities involving Lorena's testimony, the trial court sustained a pre-trial defense motion in limine and prohibited Lorena from testifying. Thereafter, the State, through the testimony of Corley Police Detective James Lewis and Donna Holmes, Lorena's friend and neighbor, related statements made by Lorena soon after the shooting. The statements by Lorena to Detective Lewis and Ms. Holmes were made at the trailer as Peters was being attended by ambulance personnel. Lorena's statement to Corley occurred later at the hospital. Each of these witnesses described Lorena as "upset," "crying," or "nervous" at the time the comments were made. In each statement, Lorena claimed the appellant shot and killed Peters, who was armed only with a Coke bottle.

█ A hearsay statement is one, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted in the statement. 12 O.S.1981, § 2801(3). Hearsay statements are "not admissible except as provided by law." 12 O.S.1981, § 2802. One provision of the law permitting admission of hearsay statements is the so-called "excited utterance" exception, which states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> *    *    *    *    *    *
>
> 2. A Statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition....

12 O.S. 1981, § 2803. Whinery has succinctly explained "[t]he foundational requirements that must be met for this exception to apply are: (1) a startling event or condition; (2) a statement relating to the startling event or condition; and (3) the statement must be made while the declarant is under the stress or excitement caused by the [event or] condition." I L. Whinery, *Oklahoma Evidence* 282 (1985). *Accord Davis v. State*, 647 P.2d 450 (Okl. Cr.1982).[1] "Because of the wide variety of factual situations," this Court will afford trial courts wide discretion in their determination "whether in fact a declarant was at the time of the offered statement still under the influence of an exciting event." E. Cleary et al., *McCormick on Evidence* 857 (3d ed. 1984). *Cf. P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.*, 568 P.2d 1273 (Okl.1977) (admissibility of statements under the *res gestae* exception is largely determined by the facts, and is properly left to the discretion of the trial court).

█ In this case, the record reveals that the statements clearly were fostered by the shooting of Tommy Peters, a startling event under any definition. Testimony that the declarant still appeared "nervous" and "upset" at the time she made her comments thus supplied a sufficient basis upon which to support the trial court's ruling. This assignment of error is without merit.

## II.

█ The appellant next contends that his statements to Police Detective Mike Buck-

1. In *Byrd v. State*, 657 P.2d 183 (Okl.Cr.1983), we mistakenly applied the foundational requirement of 12 O.S.1981, § 2803(1), the hearsay exception for one "present sense impression," requiring contemporaneity between the occurrence of the event and the statement. 657 P.2d at 186. We also required some "independent indicia of reliability" for the statement to be admissible under the "excited utterance" exception, *id.*, a foundational requirement which is not supported by the rule itself, or its legislative history. To that extent, *Byrd v. State* is overruled, and appellant's reliance thereon is misplaced.

endorf were improperly admitted into evidence. He asserts that Buckendorf refused to honor his request for an attorney and the assertion of his right to remain silent. He claimed Buckendorf questioned him during the return trip from Minnesota, where the appellant went after the crime and stayed until his arrest.

This issue appears to be governed by our decision in *Nuckols v. State,* 690 P.2d 463, 467 (Okl.Cr.1984), in which we summarized the relevant United States Supreme Court holdings on this issue:

> In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court affirmed that once an accused has asserted his right to an attorney, he may not be subjected to further custodial interrogation. *Id.* at 485, 101 S.Ct. at 1885. Only when a suspect himself initiates subsequesnt interrogation is a waiver of the right to counsel possible. *Id.*
>
> \*    \*    \*    \*    \*    \*
>
> We agree with Justice Powell in his concurring opinion in *Edwards* that our resolution of this issue focuses on two questions: "(i) was there in fact, 'interrogation', *see Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and (ii) did the police 'initiate' it." *Edwards v. Arizona, supra,* 451 U.S. at 490, 101 S.Ct. at 1887 (Powell, J. concurring). In short, did [the officer's comments] initiate a subsequent interrogation?

As we stated in *Nuckols,* "[o]ur resolution of the factual dispute presented is of paramount importance to this question." *Id.* In this case, the trial court was faced with conflicting testimony. Deputy Buckendorf testified that prior to the trip from Minnesota to Oklahoma, the officers recited the *Miranda* warning [2] to appellant. Appellant also was advised that the officers did not want to talk about the case, and that it would be to appellant's advan-

tage not to talk about the case, according to Buckendorf's testimony. Buckendorf said that the appellant, despite these warnings, initiated a conversation implicating himself in the shooting, and questioned Buckendorf about various legal defenses available, including voluntary intoxication, insanity and self-defense. Appellant was specifically asked whether he had retained counsel, and appellant replied that he had not, according to Buckendorf. Appellant, on the other hand, testified that he invoked his right to counsel and his right to remain silent. Rather than honor these rights, Buckendorf questioned appellant incessantly during the trip to Oklahoma, according to appellant.

When faced with a similar conflict of testimony in *Nuckols,* we held the "conflict ... was resolved by the trial court when it overruled the motion to suppress." 690 P.2d at 467. We cited *Lott v. State,* 586 P.2d 70, 72 (Okl.Cr.1978), in which we held that "[s]ince the defendant's motion to supress the confession because of denial of the right to counsel revolved around a factual question, determined adversely to the defendant by the trial court, it will not be disturbed on appeal where supported by sufficient evidence...." In this case, under Buckendorf's testimony, no interrogation occurred, and all statements were voluntarily made by the accused. The trial court chose to accept Buckendorf's version. Accordingly, this assignment of error is without merit.

### III.

Appellant's third assignment of error complains of the allegedly improper admission of other crimes evidence, in contravention of 12 O.S.1981, § 2404(B).[3]

■ The first allegation centers on appellant's contention that the State presented evidence, through cross-examination of a defense witness, that appellant injured

---

**2.** *Miranda v. Arizona,* 314 U.S. 431, 86 S.Ct. 1602, 16 L.Ed.2d 694.

**3.** This provision of the evidence code states: Evidence of other crimes or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

his wife in a domestic altercation. However, this statement was made after defense counsel, on direct examination, elicited evidence from the witness regarding the Griffiths' marital problems. Allowing the State to pursue a theme first raised by the defense was not error. *See Carson v. State,* 529 P.2d 499, 507 (Okl.Cr.1974).

▮▮▮▮ Appellant next complains the State introduced evidence, during the cross-examination of appellant, that the shotgun had its barrel shortened in violation of Oklahoma law. Although this evidence was improper, the trial court sustained appellant's first timely objection and admonished the jury not to consider the evidence. Because we cannot say this statement determined the verdict, we believe the admonishment cured this error. This proposition is also without merit. *Kitchens v. State,* 576 P.2d 775 (Okl.Cr.1978).

### IV.

Finally, appellant argues prosecutorial misconduct occurred during the course of the trial and the case should be reversed and remanded for a new trial.

▮▮▮▮ Appellant's initial complaint is that the prosecutor misstated the law during voir dire. The record reflects that at one time the prosecutor announced, "We don't have to prove that the killing was not in self-defense." However, immediately after a defense objection, the prosecutor explained that

> I don't want to mislead you. If at the end of the trial Her Honor instructs you on self-defense and that instruction will say we have to prove it beyond a reasonable doubt, but if you don't receive an instruction on self-defense. (sic) You understand what I'm saying?

The prosecutor did not pursue this theme further in voir dire, and the trial court, at the conclusion of the trial, correctly instructed the jury that "it is the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. If you find the State has failed to sustain that burden, then the defendant must be found not guilty." Although the prosecutor's initial statement was unfortunate and improper, we believe his subsequent explanation, together with the trial court's instructions, eliminated any potential for prejudice.

Next, appellant complains that Assistant District Attorney O'Meilia made comments emphasizing "victim's rights," and asked the jury to sympathize with the victim. He stated:

> MR. O'MEILIA: Thank you, Your Honor. If the Court please, ladies and gentlemen, no one is asking you to convict the Defendant if he hasn't been proven guilty beyond a reasonable doubt. No one is asking you to convict the Defendant just because there is a dead body, as Mr. Laphen told you. There is far more evidence in this case than just a dead body.

Tommy Peters is dead. Tommy Peters cannot come and tell you.

> MR. LAPHEN: Object, Your Honor. Improper closing argument.

> THE COURT: Overrule that.

> MR. LAPHEN: Ask the jury to be admonished and move for a mistrial.

> THE COURT: Overrule that. (Tr. 869–870).

\*   \*   \*   \*   \*   \*

> MR. O'MEILIA: The law gives the Defendant a large number of rights. The right to a jury trial, the right to have you 12 citizens sit here and listen to the evidence, the right to have the evidence presented, presumption of innocence, the right to cross examine the witnesses, the right to bring in his own witnesses, the right to take the stand and tell you his story. All these rights, the right to face his accuser. He's had all those rights. What about the rights of Tommy Peters? He's sentenced to death.

> MR. LAPHEN: Objection, Your Honor. Improper closing argument.

> THE COURT: Overruled.

> MR. LAPHEN: Ask the jury be admonished and move for a mistrial.

> THE COURT: I would overrule that.

> MR. O'MEILIA: The law gives him the right to face his accusers, the Defendant

didn't give Tommy Peters the right to even face him as he fractured his skull from behind, as he shot him twice in the back from behind with a .20 guage sawed-off pump 11 inch barrel shotgun. I ask you, ladies and gentlemen, to take all the evidence into consideration. He's had his fair trial. He's had the evidence, the right to face his accusers, and I ask you, ladies and gentlemen, to deliberate and return into this courtroom and face him as he didn't give the victim, Tommy Peters, the right. Find him guilty of murder in the first degree and sentence him in accordance with the law. Thank you. (Tr. 873–874).

■ We have repeatedly admonished prosecutors, in the strongest terms possible, to stop making arguments of this nature. *See Tobler v. State*, 688 P.2d 350, 353–54 (Okl.Cr.1984). *See also Williams v. State*, 658 P.2d 499 (Okl.Cr.1983). These comments constitute the only possible prejudicial error found in the record. In light of the substantial evidence of appellant's guilt, we are not inclined to disturb the judgment. This writer cannot find that the jury was unaffected by the comments in its determination of punishment, and accordingly, I would modify the sentence imposed to fifteen (15) years' imprisonment. However, insofar as my colleagues hold that the improper comments did not influence the punishment imposed, the judgment and sentence of the trial court is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.