**Jimmy Don McCALIP, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–85–503.**

Court of Criminal Appeals of Oklahoma.

Aug. 14, 1989.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. and M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Jimmy Don McCalip, appellant, was tried by jury and convicted of Child Abuse (21 O.S.Supp.1982, § 843), After Former Conviction of Two Felonies (21 O.S.1981, § 51), in Oklahoma County District Court, Case No. CRF–84–5272, before the Honorable William Saied, District Judge. The jury set punishment at twenty (20) years imprisonment. Judgment and sentence was imposed accordingly. We reverse.

Because we find merit in appellant's first assignment, it is unnecessary to summarize the evidence presented at trial except as it pertains to the first issue wherein appellant claims the trial court committed reversible error in admitting hearsay statements made by two-year-old M.J. respectively to his mother, Ms. Jim, a daycare employee, Ms. Wise, and a social worker, Ms. McPherren.

Appellant first challenges M.J.'s statement that "Jimmy hit me" which was made in response to questioning by his mother, Ms. Jim, on the morning of October 4. Defense counsel objected that the statement was not an excited utterance. (Tr. 10) Relying solely on *Newbury v. State,* 695 P.2d 531 (Okla.Crim.App.1985), the trial court overruled the objection on the ground the child made the statement upon first seeing his mother after he awoke. (Tr. 11) Neither the State nor the trial judge applied the foundational requirements under 12 O.S.1981, § 2803(2). The crux of appellant's argument concerns scholarly criticisms of the *Newbury* decision. *See* 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 82–83 (Supp.1988) (*Newbury* termed "highly questionable" and "difficult to defend."); Maye & Meiring, *The Child Witness in Abuse Prosecutions,* 56 Okla. B.J. 2946, 2951 (1985) (The *Newbury* case "stretched the excited utterance exception beyond its logical extreme."); Note, *Criminal Law: The "Excited Utterance Exception" to the Hearsay Rule: An Analysis of Federal and Oklahoma Law in Light of Newbury v. State,* 39 Okla.L.Rev. 84, 96 (1986) (*Newbury* criticized for "its result-oriented approach....") [hereinafter cited as Note, *Excited Utterance Exception* ].

"Three foundational requirements must be met before hearsay evidence is admissible under the excited utterance exception: (1) a startling event or condition; (2) a statement relating to the startling event or condition; and (3) the statement must be made while the declarant is under the stress of excitement caused by the event or condition." Note, *Excited Utterance Exception, supra,* at 84. *See also* Whinery, *supra,* at 282. The State's theory of the case was that appellant abused M.J. between 7:30 and 10:00 p.m. on October 3, 1984, while his mother, Ms. Jim, was absent. M.J. slept soundly through the night. Appellant left for work at 6:00 a.m. the next morning. Between 8:00 and 8:30 a.m., according to Ms. Jim, M.J. came into her bedroom. He "wasn't walking too well and he didn't act like he was feeling too well, either." (Tr. 9–10) When Ms. Jim asked M.J. what was wrong, he replied "Jimmy hit me."

First, we have little difficulty in finding that acts of child abuse meet the requirement of a startling event. Accepting the State's theory of the case, the startling event, i.e. abuse, occurred between 7:30 and 10:00 p.m. on October 3, 1984. Second, at least on its face, M.J.'s statement appears to relate to the acts causing his injuries. However, insofar as appellant admitted spanking M.J. during the time he was babysitting, it cannot be said with certainty that the statement directly related to acts of child abuse as opposed to the spanking. *See* Note, *Excited Utterance Exception*, at 95.

Third, the most difficult question is whether the statement was made while M.J. was under the stress of excitement caused by the startling event. Admittedly, Ms. Jim testified that M.J. wasn't "walking too well" at the time of his statement, suggesting that he was at least suffering physically from acts of abuse. However, unlike our most recent cases, here there was no evidence that M.J. was emotionally upset or excited at the time of the statement. *See e.g., Rawlings v. State,* 740 P.2d 153, 163 (Okla.Crim.App.1987); *Stouffer v. State,* 738 P.2d 1349, 1357 (Okla. Crim.App.1987), *cert. denied,* — U.S. —, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Griffith v. State,* 734 P.2d 303, 305 (Okla.Crim. App.1987). *See also Miller v. Keating,* 754 F.2d 507, 512 (3d Cir.1985). Further, in *Rawlings* and *Stouffer* the hearsay statements were made within minutes following the startling event, and in *Griffith,* the statements were made while the victim was being attended to by medical personnel at the scene of the shooting. In contrast, M.J.'s statement to his mother was made between ten and twelve hours after he was alleged to have been abused. The fact that M.J. slept soundly through the night makes it less probable that his statement the next morning was made while he was under the stress of excitement of a startling event. *See* Note, *Excited Utterance Exception,* at 93. More importantly, in the case at bar, the record does not support a finding that M.J. spontaneously volunteered the statement upon awakening and first seeing his mother. Ms. Jim testified that prior to M.J.'s statement, she had tried to feed him breakfast, but he would not eat. (Tr. 10–11)

The underlying justification for the excited utterance exception "is that the spontaneity of the statement in relation to the exciting event gives rise to trustworthiness." Whinery, *supra,* at 282. Here, M.J.'s statement was made in response to questioning by his mother, and was not truly spontaneous. *See* Note, *Excited Utterance Exception, supra,* at 93. Further, inconsistencies in Ms. Jim's testimony cast doubt on the spontaneity of the statement. Ms. Jim testified she tried to feed M.J. breakfast prior to the statement (Tr. 10–11); that she did not have time to feed M.J. breakfast that morning (Tr. 19); and that she fed M.J. breakfast before taking him to the daycare center. (Tr. 22)

■ Thus, we hold the trial court erred in failing to sustain defense counsel's objection to the admission of M.J.'s statement as an excited utterance. Insofar as *Newbury* is inconsistent with our holding, it is hereby overruled. Further, because the statement was not admissible as an excited utterance, and the State made no attempt to demonstrate the unavailability of M.J., appellant was also denied his constitutional right of confrontation. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

This leads us to appellant's claim that trial counsel was ineffective in failing to object to the admission of two other hearsay statements. The first was made by M.J. to Johnna Wise around 5:30 p.m. on October 4. (Tr. 75–76) The second occurred when Ms. McPherren was allowed to testify, apparently based on what M.J. told Ms. Jim, that Ms. Jim claimed her boyfriend, appellant, had hurt M.J. (Tr. 89) There is no support in the record that the foregoing two statements could qualify as excited utterances. "Hearsay is not admissible except as provided by law." 12 O.S. 1981, § 2802. The failure to object to such blatant hearsay is inexcusable. *See Collis v. State,* 685 P.2d 975, 977 (Okla.Crim.App. 1984).

Ms. Jim's testimony was severely impeached at trial. At first she testified she only saw bruises on M.J.'s face, but then admitted seeing his other injuries when she changed his clothes before taking him to the daycare center. Ms. Jim stated that she "did lie a little bit" in her statements to police, and did not reveal M.J.'s statement that "Jimmy hit me" in her first statement to police. She admitted spanking M.J. with a thong, leaving bruises on his buttocks. When confronted by the daycare worker on October 4, Ms. Jim stated M.J. "looked like that" when she picked him up from a babysitter the night before. Ms. Jim was out drinking the evening of October 3, and, according to appellant, returned home drunk. She first claimed she did not see M.J. when she returned home, but then stated she kissed him on the cheek before going to bed. Under the circumstances, we find there is a reasonable possibility the errors contributed to appellant's conviction, and therefore, we cannot conclude that the errors were "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Accordingly, the judgment and sentence is REVERSED and REMANDED for a NEW TRIAL.

LANE, V.P.J., dissents.

BRETT and LUMPKIN, JJ., concur.

LANE, Vice Presiding Judge, dissenting:

I dissent to the opinion of the majority, and I would not overrule *Newbury v. State*, 695 P.2d 531 (Okl.Cr.1985). In *Newbury* a babysitter disappeared while babysitting a four year old child and her sibling. When the child's father returned to the house the children were asleep. When the little girl awoke at 9:00 a.m. the next morning and was asked what happened to the babysitter she replied that the babysitter left with the T.V. man. This Court affirmed the admission of this evidence under the "excited utterance rule" of 12 O.S.1981, § 2803(2), stating that even though there was an intervening time between the event and the utterance, the child was asleep and made the statement at the first opportunity upon awakening.

We have the same situation in the current matter. When the mother returned home on the night of the injury the child was asleep. When the child awoke the next morning and the mother noticed his physical condition, she inquired as to the cause of the condition and was told that Appellant did it. The purpose of § 2803 is to permit evidence that would constitute hearsay to be admitted if it rises to a certain level of reliability. I find more reliability in a statement made by a two year old boy who has been a victim of a crime than I do in a statement of a four year old who has only been a witness to a part of a crime, especially when he is still suffering from his injuries.

The child also made similar statements to others the same day, but at a time more remote than when he made the statement to his mother and these statements were received into evidence. The same thing occurred in *Newbury* and this court did not reverse, holding that the evidence of other statements was merely cumulative. I would hold that the same applies here.

In light of the above reasoning, I hereby DISSENT.