Dale Austin SHELTON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–86–920.

Court of Criminal Appeals of Oklahoma.

May 24, 1990.

Irven R. Box and Diane Clowdus, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Vice–Presiding Judge:

Dale Austin Shelton, Appellant, was charged and tried by jury for the crimes of Murder in the First Degree (21 O.S.Supp. 1982, § 701.7 B); two counts of Kidnapping for the Purpose of Extortion (21 O.S.1981, § 745A); Rape in the First Degree (21 O.S. Supp.1983, § 1114); and Forcible Oral Sodomy (21 O.S.1981, § 888) in Case No. CRF–85–6156 in the District Court of Oklahoma County. The jury returned a verdict of guilty to each count and set punishment at life imprisonment for each count to be served consecutively. Appellant was sentenced accordingly.

On August 19, 1985, Appellant served as a lookout, while Don Wilson Hawkins forced his way into Linda Thompson's car at the Shepherd Mall Postal Station in Oklahoma City and kidnapped Thompson and her two young daughters. Hawkins drove Thompson's car to the place he was staying, the "big house", near the intersection of Bryant and 50th streets in Oklahoma City; Appellant drove back in their car. Hawkins later chained Thompson in the loft of the "big house" barn. Appellant removed the chain, raped and sodomized Thompson and rechained her. Although Hawkins claimed he was holding Thompson for ransom, a ransom demand was never made. The next day Appellant and Hawkins drove Thompson in her car to Sportsman Lake in Seminole, Oklahoma. Appellant again served as a lookout while Hawkins bound, gagged and drowned Thompson. Appellant helped Hawkins drag the body out of the lake and camouflage it under brush in a nearby ravine. Meanwhile, Hawkins' girl friend and her nephew took Thompson's children to their regular babysitter. Appellant and Hawkins fled the state and were arrested subsequently in Sacramento, California. They were tried together and each has perfected a separate appeal.

Appellant argues in his first proposition of error that the admission of character evidence regarding the victim, Linda Thompson, denied him a fair trial. Appellant relies on *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) in which the United States Supreme Court disapproved of the use of victim impact statements which provide the jury with information regarding the personal characteristics of the victim, the emotional impact of the crime on the family and the family's opinions of the crimes and the defendant. The *Booth* victim impact statement was used in the sentencing stage of trial. 107 S.Ct. at 2532. Appellant complains of testimony from Thompson's ex-husband, uncle and boyfriend that she took good care of her children, fed them nutritiously, took them to the doctor when necessary and fenced her backyard so they would not wander into the street. Testimony also established Thompson was a serious aerobics student who had a bachelor's degree from a small college in Minnesota. Unlike *Booth*, no evidence regarding the emotional impact of Thompson's murder on her fami-

ly, or her family's opinion of the crimes or the Appellant was presented at trial.

In order to prove the charge of Kidnapping for Extortion, the State had to prove Appellant forcibly seized and confined Thompson's daughters without her authority. 21 O.S.1981, § 745. Evidence regarding how Thompson took care of her children tends to prove Appellant did not have her permission to confine them. The probative value of this evidence far outweighs any prejudice it might cause, and thus, it was properly admitted. *See* 12 O.S.1981, § 2402. The evidence regarding Thompson's education and interest in aerobics is irrelevant and should not have been admitted. The possible impact of this evidence is, however, so minimal that it could not have affected the jury's verdict. It's admission, therefore, is harmless error. *See Cooper v. State*, 671 P.2d 1168 (Okl.Cr. 1983).

■ Appellant next argues he was denied a fair trial by the introduction of one photograph and two photo-identification card pictures taken of Thompson while she was alive. This Court does not encourage the use of photographs taken of victims before their demise and we caution prosecutors to first seek other forms of proof which are less prejudicial. *Newbury v. State*, 695 P.2d 531 (Okl.Cr.1985) *overruled in part on other grounds McCalip v. State*, 778 P.2d 488, 490 (Okl.Cr.1989). However, photographs of victims while they were alive may be admissable where they are relevant to a material issue and would reasonably assist the jury in determining the defendant's guilt. *Whittmore v. State*, 742 P.2d 1154 (Okl.Cr.1987).

■ In the instant case, the identity of the woman whom Appellant raped, sodomized and helped kidnap and murder was a material trial issue. Appellant argues that his stipulation that the dental x-rays of the skeletal remains would match Thompson's dental x-rays eliminates identity as a trial issue. This stipulation establishes only the identity of the remains. The photograph was essential in eliciting testimony from two key witnesses that Thompson was in fact the woman brought to the "big house". This photograph therefore was properly admitted. *See Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958).

■ The photo-identification cards were found by Oklahoma City Police Officer Horn, in a purse in a crate next to the garage of the "big house". Co-defendant Hawkins told Oklahoma City Police Detective Sellers that he put the purse of the woman he killed in a crate next to the garage. These identification cards therefore are material corroborative evidence which is also relevant to the identification of Appellant's victim. We find the relevance of these photo-identification cards outweighs the danger that the jury would substitute emotion for reason in this case. *Newbury v. State*, 695 P.2d 531 (Okl.Cr. 1985).

■ Appellant asserts as his third proposition of error that he was improperly denied a change of venue. He claims pretrial publicity in Oklahoma County tainted the jury panel. The trial court has the discretion to grant or deny a change of venue and we will not reverse the trial court's decision absent an abuse of that discretion. *Godbey v. State*, 731 P.2d 986 (Okl.Cr.1987). An abuse of discretion in the refusal to grant a change of venue because of pretrial publicity is shown only where the defendant was prevented from receiving a fair trial by an impartial jury. *Plunkett v. State*, 719 P.2d 834 (Okl.Cr. 1986), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 675, 93 L.Ed.2d 725 (1986). The jury panel consisted of three people who had not heard of this case before trial and nine people who had heard of the case, but had not formed an opinion. Extensive *voir dire* was conducted. Each juror who had heard of the case before trial was individually examined by the trial judge and counsel in chambers. Each of the jurors finally seated stated he or she could set aside any opinion held and impartially judge the case on the evidence presented at trial. This is the standard of a fair jury trial. *Hale v. State*, 750 P.2d 130 (Okl.Cr.1988) *cert. denied* 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988). We find no abuse of

discretion by the trial judge in denying Appellant a change of venue.

■ Appellant also attacks venue in Oklahoma County by arguing he was coerced into waiving venue in Seminole County. Neither the facts nor law of this case support this argument. Appellant has the constitutional right to be tried in the county in which the crime was committed. Okl. Const. art. II, § 20. This constitutional right is a personal privilege which may be waived. *Morris v. State*, 363 P.2d 377 (Okl.Cr.1961). However, waiver of venue is not an issue in this case. The evidence clearly established the crime was committed in both Oklahoma and Seminole counties. Venue was, therefore, proper in either county at the State's discretion. 22 O.S.1981, § 124.

■ In his fourth proposition of error, Appellant asserts prosecutorial misconduct denied him a fair trial. Appellant failed to object at trial to several of the alleged improper statements. Failure to object at trial when the error may be cured by the trial judge waives review by this Court for all but fundamental error. *Coleman v. State*, 747 P.2d 322 (Okl.Cr.1987). After review of the entire record, we conclude these statements did not affect the outcome of this trial and therefore, do not constitute reversible error. *See Campbell v. State*, 636 P.2d 352 (Okl.Cr.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). Appellant also cites several statements to which the trial court sustained his objection. These statements were such that any error was cured by the trial court. *See Mann v. State*, 749 P.2d 1151 (Okl.Cr.1988), *cert. denied* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988).

■ Appellant misconstrues other crimes evidence when he argues the prosecutor improperly referred to other crimes evidence in his opening statement which was later elicited during the State's case in chief. In describing the series of events which culminated in the Appellant and his co-defendant kidnapping Thompson and her children the prosecutor stated:

When they got there, Shelton acted as a lookout while Hawkins with his gun went up to the postal substation to wait for a victim. One woman came by and Hawkins started towards her and about that time a security guard from the mall went by. So, that woman escaped just by the grace of that security guard showing up. A short time thereafter, Linda Thompson drove up to the substation ...

(Tr. vol. II,7).

Appellant objected at this point on the grounds this was an improper reference to another crime, attempted kidnapping. This evidence was later admitted over Appellant's objection. The prosecutor's statement refers to admissable evidence of the *res gestae* of the kidnapping of Thompson and her daughters and is therefore proper comment. Evidence of another crime will not be excluded where, as here, it incidently emerges as events are revealed in their natural sequence. *See Gay v. State*, 739 P.2d 531 (Okl.Cr.1987).

■ Appellant claims several heated exchanges between the prosecutor and defense counsel prejudiced his right to a fair trial. As the record plainly reveals these exchanges took place in chambers and outside the presence of the jury, Appellant's argument is specious.

■ Appellant next argues several statements made by the prosecutor and objected to during closing argument warrant reversal. The State's argument fell within the wide latitude possessed by counsel for both the defendant and the State to discuss freely, from their standpoint the evidence as well as inferences and deductions arising therefrom. Reversal will occur only when argument by counsel for the State is grossly improper and unwarranted on some point which may affect the defendant's rights. *Hartsfield v. State*, 722 P.2d 717 (Okl.Cr.1986). We conclude after review of the entire record that the prosecutor's closing argument was not grossly improper and did not infringe on Appellant's rights.

Appellant also argues the prosecutor made improper comments regarding his co-defendant during closing argument. Appellant does not advise this Court as to how

these remarks affected him, therefore, we will not address this argument.

Although he did not object to the following comments by the prosecutor during closing argument of the second stage of trial, Appellant now claims they constitute an improper appeal for sympathy for the victim.

> There is no way Linda Thompson can be brought back ... (Tr. Vol. VI, 181).

> I wish I still had the evidence up here because I'd like to show you the pictures of Linda Thompson because that's what we're here about. (Tr. Vol. VI, 192).

This Court does not condone prosecutor's comments encouraging the jurors to allow improper sympathy, sentiment or prejudice to influence their decisions. *Grant v. State*, 703 P.2d 943 (Okl.Cr.1985). These statements are an improper appeal for sympathy. However, by failing to object at trial, Appellant has waived all but fundamental error. We find these comments do not warrant reversal as they are not so prejudicial as to have affected the jury's verdict. *Vaughn v. State*, 697 P.2d 963 (Okl.Cr.1985).

As his fifth proposition of error, Appellant asserts his confession was improperly admitted on the alternate grounds that either it was involuntary or that the only other evidence of the *corpus delicti* was obtained from uncorroborated accomplice testimony. When the trial judge conducted a *Jackson v. Denno* hearing to determine whether Appellant's confession was voluntary, sharply contradicting evidence was heard. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). When Appellant was arrested in California he was held first in Sacramento, and later transferred to San Diego. Appellant claimed that Sacramento police officers stomped on his leg irons, punched him in the ribs and sides and demanded a full confession. However, photographs taken of the Appellant and his tattoos at the request of Oklahoma City detectives who traveled to San Diego to interview him reveal no evidence of this alleged attack. Appellant stated in the *Jackson v. Denno* hearing that these photographs were taken

before the Sacramento police attacked him. (Tr. Vol. IV., 240). This testimony was refuted by Oklahoma City Detective Bill Citty. San Diego County Deputy Sheriff, Robert Rye, testified he conducted a pat-down search of Appellant at the Sacramento County Jail when he arrived to transfer Appellant to San Diego, and saw Appellant dress. Rye saw no evidence of cuts or bruises. During the ten hour drive from Sacramento to San Diego, Appellant did not mention to Rye that he had received any abuse. The trial judge viewed the video tape of Appellant's confession. After considering the totality of the circumstances including the characteristics of the Appellant and the details of the interrogation, the trial judge properly concluded Appellant's confession was voluntary.

In asserting his confession is inadmissible because the only other evidence of the *corpus delicti* was obtained from uncorroborated accomplice testimony, Appellant erroneously argues the State's witnesses, Shirley Pitts and Chris Lovell were accomplices to his crime. Corroboration of a witness' testimony is not required absent evidence that the witness participated in the planning or commission of the crime. *Smith v. State*, 727 P.2d 1366 (Okl. Cr.1986) *cert. denied* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987). The record contains no evidence that Pitts or Lovell planned or committed the kidnapping or murder. Pitts and Lovell are at most accessories after the fact, and as such, their testimony does not require corroboration. *See Id.*

Appellant next asserts the trial court improperly denied his Motion for Severance and forced him to share peremptory challenges with his co-defendant. We will address the question of peremptory challenges first.

Appellant makes a due process challenge to the constitutionality of the provision of 22 O.S.1981, § 655 which requires that co-defendants who are tried jointly must share in the nine (9) peremptory challenges allowed by statute. This argument is unavailing. Peremptory chal-

lenges are a creature of statute and are not required by either the state or federal constitution. *See Fritz v. State,* 730 P.2d 535 (Okl.Cr.1986); *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) *reh. denied* 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988). The Supreme Court recognized in *Ross* that the right to peremptory challenges is denied or impaired only if the defendant does not receive that which state law provides. *Id.* 108 S.Ct. at 2279. In this case, Appellant received all the peremptory challenges he was entitled to under 22 O.S.1981, § 655. Therefore, his due process claim against the sharing of peremptory challenges must fail.

■ Appellant relies on *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) to argue he was prejudiced in the joint trial by the admission of his co-defendant's out-of-court statement. The decision to grant or deny severance is left to the sound discretion of the trial court. In the interest of both justice and economy, we have urged trial courts to jointly charge and try persons who have allegedly participated in the same criminal act whenever possible. *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985) *cert. denied* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *see also* 22 O.S.1981, § 438. Absent an abuse of discretion resulting in prejudice to the Appellant, the decision of the trial court will not be disturbed on appeal. *Cooks* at 658.

Under *Bruton,* severance is necessary when the State seeks to introduce, through a third party, the confession of a non-testifying co-defendant which inculpates the non-confessing defendant. The *Bruton* rule prevents the introduction of evidence which directly incriminates the non-confessing defendant in violation of his Six Amendment right of confrontation. *Menefee v. State,* 640 P.2d 1381 (Okl.Cr.1983).

This case is outside the *Bruton* rule for two reasons: (1) Appellant confessed; and (2) his co-defendant, Hawkins, testified. Appellant's confession was introduced by the State through the testimony of Detective Citty. The record reveals Appellant had the opportunity to cross-examine Hawkins but did not avail himself of the opportunity. After his direct testimony, Hawkins refused to answer questions posed by the District Attorney during cross-examination and was held in direct contempt by the trial court. When the trial court asked Appellant's counsel whether he wished to cross-examine Hawkins, he replied, "No, no." (Tr. Vol. V, 181). Appellant's right of confrontation was satisfied by his opportunity to cross-examine Hawkins. *See Taylor v. State,* 659 P.2d 374 (Okl.Cr.1983).

We might speculate Appellant's cross-examination of Hawkins would have been an exercise in futility. However, we can decide only those matters properly preserved on the record for our review. *See Griffith v. State,* 734 P.2d 1301, 1303 (Okl.Cr.1987); *Holbert v. State,* 664 P.2d 1061, 1062 (Okl. Cr.1983); *Ingram v. State,* 611 P.2d 274 (Okl.Cr.1980). Cross-examination of any witness may be waived by the defense. We find that on the record before us Appellant waived his right to cross-examine. The trial court properly denied severance.

■ We have also examined the content of the out-of-court-statements of each co-defendant to determine if they are mutually antagonistic in that each co-defendant attempted to exculpate himself and inculpate the other. If the defenses of the two defendants are mutually antagonistic, trying them jointly denies each a fair trial because each would be tried on the confession of the other. *See Murray v. State,* 528 P.2d 739 (Okl.Cr.1974), *Master v. State,* 702 P.2d 375 (Okl.Cr.1985). We find that the out-of-court-statements made by each defendant in this case was not antagonistic to the other and therefore, severance was not necessary on this ground.

■ Relying on *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Appellant next contends the trial court denied him due process by refusing to either appoint an investigator to assist with his defense or grant his attorney travel funds to be used for investigation of his case. *Ake* requires that the trial court appoint a psychiatrist or psychologist to assist with the defense when a defendant

makes an *ex parte* preliminary showing to the trial judge that his sanity is likely to be a significant factor at trial. 470 U.S. at 83, 105 S.Ct. at 1096. In this case, Appellant did not attempt an insanity defense. In *Standridge v. State*, 701 P.2d 761 (Okl.Cr. 1985) this Court left open the question whether the *Ake* holding extended to assistance other than a psychiatric expert. Subsequently, this Court has held *Ake* does not mandate the appointment of an investigator. *Vowell v. State*, 728 P.2d 854 (Okl. Cr.1986). In *Castro v. State*, 745 P.2d 394, 399 (Okl.Cr.1987) *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988) we held the trial court did not err in denying defendant's pre-trial motion for expense money in order to continue to interview witnesses and prepare for trial. In the instant case, Appellant has not demonstrated he was denied access to evidence which is material to either guilt or punishment. Appellant has failed to show substantial prejudice from the lack of these requested funds and the appointment of an investigator. We find the trial court properly denied Appellant's request for an appointed investigator and travel funds. *See Munson v. State*, 758 P.2d 324 (Okl.Cr.1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

 Appellant next asserts that five year old Lori Thompson was not a competent witness on the grounds she could not take an oath and was unable to tell right from wrong as required by 12 O.S.1981, § 2603. A child is a competent witness under 12 O.S.1981, § 2603 if he or she has personal knowledge of the matters at issue, and has taken an oath or similar affirmation to tell the truth. *Gray v. State*, 650 P.2d 880, 884–85 (Okl.Cr.1982). In this case the following exchange took place *in camera* to determine whether Lori Thompson was competent to testify:

THE COURT: Okay. You do know the difference between telling what's right and what's wrong?

LORI THOMPSON: Yes.

THE COURT: And do you know—do you know what could happen to you if you told something that was wrong? Did you ever tell your Daddy anything that was wrong?

LORI THOMPSON: One time; sometimes.

THE COURT: Sometimes. Did he ever find out that it was wrong?

LORI THOMPSON: Yes.

THE COURT: Huh?

LORI THOMPSON: Yes.

THE COURT: And what happened when he found out that you told him something that was wrong?

LORI THOMPSON: He would—a spanking.

THE COURT: He would give you a spanking? Did you ever get a spanking for telling what was right?

LORI THOMPSON: No.

THE COURT: So, what can happen to you if you tell something wrong?

LORI THOMPSON: You'll get a spanking.

THE COURT: You'll get a spanking. So, will you tell us today what's right?

LORI THOMPSON: I don't know.

THE COURT: You wouldn't tell us what was right today? If I let Mr. Macy ask you some questions, will you tell us what was right? Can you answer?

LORI THOMPSON: Yes.

THE COURT: And you know what could happen to you if you told it wrong?

LORI THOMPSON: You'll get a spanking . . .

THE COURT: Lori, will you promise that you will only tell what's right?

LORI THOMPSON: Yes.

THE COURT: And you won't tell anything that's wrong?

LORI THOMPSON: No.

THE COURT: Will you agree to not tell anything that's wrong?

LORI THOMPSON: Yes.

THE COURT: I think she knows right from wrong.

(Tr. III, 136, 137)

Lori Thompson also testified to the facts she remembered. We are satisfied Lori Thompson had personal knowledge and affirmed she would tell the truth. The requirements of 12 O.S.1981, § 2603 are thus

satisfied. Appellant makes the bald assertion that the danger of unfair prejudice and the likelihood of misleading the jury far outweighs the probative value of Lori Thompson's testimony. This assertion has no support in the record. Lori Thompson testified as follows:

(BY MR. MACY): Lori, do you remember going to the stamp bank with your mommy?

ANSWER: Yes.

MR. BOX: We have an objection as to that as leading and suggestive.

THE COURT: Overruled.

(BY MR. MACY): Did you see anyone there at the stamp bank, besides you and your mommy and Katie?

ANSWER: NO.

QUESTION: Okay. Tell me what happened when you and your mommy and Katie got to the stamp bank.

ANSWER: When she was getting stamps the cow—and when she started to get in the car the cowboy got in the car and went to the house.

QUESTION: What—what did Cowboy do when he got in the car with your mommy, honey?

ANSWER: He first put handcuffs on.

QUESTION: Before he put the handcuffs on did he do anything to your mommy?

ANSWER: Some of her money?

QUESTION: Speak up, honey.

ANSWER: Taked some of her money.

QUESTION: And what did he do before that?

ANSWER: I don't remember much before that.

QUESTION: What was the first thing that happened when Cowboy came to your mommy?

ANSWER: She was getting into the car and she was starting the car and he came around the corner on to the car and she didn't *???* her door yet. So, he got inside the car and hurted her.

QUESTION: You say he hurted her?

ANSWER: Ah-huh.

QUESTION: Okay. And then did he put the handcuffs on, honey?

ANSWER: Ah-huh.

QUESTION: And then, did he take you all some place else?

ANSWER: Took us to the—

MR. BOX: Objection as leading and suggestive.

ANSWER: —to this house.

THE COURT: Overruled.

MR. MACY: Excuse me, Judge.

(WHEREUPON, a discussion was had at the bench with court and counsel, out of the hearing of jury.)

MR. MACY: Judge, the question is whether or not she saw a gun.

MR. BOX: I know what he's going to say and I object as being suggestive.

MR. MACY: We're talking about a five year old little girl.

THE COURT: All right. Overruled.

(WHEREUPON, the following was in the hearing of the jury).

MR. MACY: Lori, while you were there on that day with your mommy and Katie and cowboy, did you see a gun?

ANSWER: Yes.

MR. BOX: Let the record not (sic) our objection.

THE COURT: Yes.

MR. MACY: Where were—

THE COURT: Just a moment. Yes, your objection is noted in the record and is overruled.

MR. MACY: Where did you see the gun?

ANSWER: Right here, something was holding it.

QUESTION: Right here on who?

ANSWER: On Cowboy.

QUESTION: Something was holding it on?

ANSWER: Yeah.

QUESTION: Okay, honey, just go head and tell me what happened then.

ANSWER: Then he started the car.

THE COURT: Okay, can you talk—

MR. MACY: Talk right into this thing.

ANSWER: Okay. He started the car up and he druve (sic) to this house.

QUESTION: What happened there?

ANSWER: We had to put in the other room that wasn't with my mommy. And

my mommy wanted to see us and she wanted a drink of water and we were there for one week I think and my daddy found ...

QUESTION: Let's just stop right there, honey. That's all I want to ask at this time.

(Tr. Vol. III, 152–155).

Lori Thompson's corroborating testimony was direct and straight forward. Nothing in her testimony was misleading or unfairly prejudicial.

▮▮▮▮ Appellant next argues he was denied due process by the trial court's denial of his Motion for Continuance lodged after the State rested in the second stage of trial. The decision to grant a continuance lies within the sound discretion of the trial court absent a showing of abuse of discretion. *Henegar v. State*, 700 P.2d 659 (Okl.Cr.1985). Abuse of discretion will not be found where an appellant does not indicate how he was prejudiced by denial of the motion. *Pankratz v. State*, 663 P.2d 26 (Okl.Cr.1983). Appellant presents no facts to this Court to indicate how he was prejudiced by the trial court's denial of his Motion for Continuance. He states he was denied the opportunity to receive separate consideration regarding his degree of individual participation in the crimes charged. In fact, Appellant received consecutive life sentences for the crimes he committed; his co-defendant received death. We find the trial judge did not abuse his discretion in denying Appellant's Motion for Continuance.

▮▮▮▮ As his tenth proposition of error, Appellant raises three issues regarding the instructions submitted to the jury. Appellant first urges the trial court should have given OUJI–CR 817 which provides that a confession may not be considered by the jury against any defendant other than the person who made it. In this case we have confessions by both Appellant and his co-defendant properly admitted at trial. Each of the confessions is entirely redacted except for the words "they" and "them" used by Detective Sellers seven times when he recounted Hawkins' confession. We need not and expressly do not reach the question whether Hawkins' confession was sufficiently redacted. *See e.g. Fontenot v. State*, 742 P.2d 31 (Okl.Cr.1987); *Ward v. State*, 755 P.2d 123 (Okl.Cr.1988). When Appellant's co-defendant took the stand and Appellant waived his right to cross-examine, Appellant moved outside the scope of the cautionary instruction. *See* Commission Comment OUJI–CR 817. However, we must also make clear that had this cautionary instruction been indicated at trial it would no longer have been sufficient under the recent holding of *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

▮▮▮▮ Appellant also argues the trial court erred in refusing to give instruction OUJI–815 which provides that independent evidence of the homicide must corroborate Appellant's confession. We agree that independent evidence of the homicide must corroborate Appellant's confession. We agree the trial court erred in refusing this instruction. However, the record reveals ample evidence corroborating Appellant's confession. Shirley Pitts identified the woman brought to the "big house" as Linda Thompson. Chris Lovell testified he saw Appellant have oral and vaginal sexual intercourse with Thompson. Thompson was last seen alive being driven away from the "big house" by Appellant and Hawkins. Thompson's skeletal remains were found where Appellant said they would be found. Where the record contains corroborating evidence, failure to give the corroborating instruction does not result in reversible error. *See Maxwell v. State*, 742 P.2d 1165 (Okl.Cr.1987); *Smith v. State*, 727 P.2d 1366 (Okl.Cr.1986) *cert. denied* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987).

▮▮▮▮ Appellant next asserts the trial court erred in refusing to instruct the jury under OUJI–CR 717 which sets forth the defense of duress. Appellant argues this defense was supported by Chris Lovell's testimony that Appellant told Thompson he wouldn't help her escape because Hawkins might shoot him and Detective Citty's testimony that Appellant hid Hawkins' gun and told him that he could have been killed if he

helped Thompson. The record contains no evidence that Hawkins used actual force or fear to compel Appellant to rape and sodomize Thompson or to assist in kidnapping and murdering her. The evidence did not support this instruction which the trial court properly refused. *See Lee v. State*, 637 P.2d 879 (Okl.Cr.1981); 21 O.S.1981, §§ 152(7), 155, 156; *compare Tully v. State*, 730 P.2d 1206 (Okl.Cr.1986).

█ As his final proposition of error, Appellant argues the accumulation of error justifies reversal or modification. The error found and addressed is such that neither modification or reversal is warranted. *Stouffer v. State*, 738 P.2d 1349, 1363 (Okl. Cr.1987), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

Finding no error which requires modification or reversal, the judgment and sentence of the trial court is AFFIRMED.

BRETT and JOHNSON, JJ., concur.

LUMPKIN, J., concurs in result.

PARKS, P.J., specially concurring.

PARKS, Presiding Judge, specially concurring:

I write separately to address appellant's assertion that the trial court erred in refusing to either appoint an investigator to assist with his defense or grant him funds to be used for that purpose. It continues to be the opinion of this writer that the ruling in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), "must necessarily be extended to include any expert which is 'necessary for an adequate defense.'" *See Ake v. State*, 778 P.2d 460, 464 n. 1 (Okl.Cr.1989). Before a defendant is entitled to such assistance, however, he must first make the requisite showing of need. *Id.* In the present case, I agree with the majority that appellant has failed to show substantial prejudice from the lack of the requested investigator or funds. Accordingly, I concur that the trial court properly denied the same.