Richard Eugene HAMMON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–91–432.

Court of Criminal Appeals of Oklahoma.

June 30, 1995.

Rehearing Denied Aug. 1, 1995.

Duane A. Woodliff, Henryetta, for appellant at trial.

Thomas C. Giulioli, Gregory Stidham, O.R. Barris, III, Okmulgee, for State at trial.

William H. Luker, Deputy Appellate Indigent Defender, Norman, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

*OPINION*

STRUBHAR, Judge:

Richard Eugene Hammon, Appellant, was tried by jury in the District Court of Okmulgee County, Case No. CRF–90–144, before the Honorable Anne Moroney, District Judge.[1] Hammon was convicted of Murder in the first degree (21 O.S.Supp.1989, § 701.7(B)), Possession of a Stolen Vehicle, After Former Conviction of Two or More Felonies (47 O.S.1981, § 4–103), Knowingly Concealing Stolen Property, After Former Conviction of Two or More Felonies (21 O.S. 1981, § 1713), Using a Weapon in the Commission of a Crime, After Former Conviction of Two or More Felonies (21 O.S.Supp.1982, § 1287), Possession of a Firearm After Former Conviction of a Felony (21 O.S.Supp.

---

1. Hammon was tried jointly with Benny Dwight Jones who perfected his appeal separately under Court of Criminal Appeals Case No. F–91–433.

The trial was conducted in three stages, guilt/innocence, punishment for all non capital crimes and punishment for Murder in the first degree.

1989, § 1283) and Feloniously Pointing a Weapon, After Former Conviction of Two or More Felonies (21 O.S.1981, § 1289.16). The jury recommended death for murder in the first degree after finding the existence of four aggravating circumstances [2], twenty (20) years imprisonment for possession of a stolen vehicle, twenty (20) years imprisonment for knowingly concealing stolen property, one hundred (100) years imprisonment for using a weapon in the commission of a crime, one hundred (100) years imprisonment for possession of a firearm after former conviction of a felony and one hundred (100) years imprisonment for feloniously pointing a weapon. The trial court sentenced Hammon accordingly. From this Judgment and Sentence, he appeals. We affirm in part, reverse in part and remand this case to the district court to hold a new sentencing hearing.

## FACTS

On June 28, 1990 Hammon and co-defendant Jones entered Truck 'N Things, an automotive accessory and parts store in Okmulgee, Oklahoma owned by Eugene Slape. Jones approached Slape at the front counter seemingly to purchase merchandise. As Slape rang up the sale and the cash register drawer opened, Jones robbed him. Jones claimed Slape appeared to be reaching for a gun so he shot him three times.

While Jones was confronting Slape at the front counter, Hammon ran to the back room where he found Bradley Slape, Eugene Slape's son, tinting windows on a Dodge pickup. Hammon told Bradley Slape, "I said this is a fucking holdup." Bradley Slape jumped in the pickup seat and begged Hammon not to shoot. Hammon pointed his gun at Bradley Slape's head and then began to run from the room. Bradley Slape raised his head to see where Hammon was and Hammon stopped running and again pointed his gun at Bradley Slape's head.

When Bradley Slape heard the front door close, he went to check on his father and found him lying on the floor staring at the ceiling. Bradley Slape contacted the police and tried to assist his father. The police arrived shortly thereafter and resuscitation measures proved unsuccessful.

Bradley Slape told Detective Travis Tolar that he knew the man who ran into the back room and pointed a gun at his head. He advised he did not know his name, but could identify him from a high school yearbook. Detective Tolar obtained an Okmulgee High School yearbook and Bradley Slape identified Hammon as the man who pointed a gun at his head.

As Detective Tolar was leaving Truck 'N Things he received a tip from an informant that Hammon was "staying at the Projects." Detective Tolar and several other officers proceeded to the "Projects" to apartment 603–A. Detective Tolar knocked on the door of 603–A and Hammon and Jones were arrested without incident.

After obtaining consent to search from Cassandra Jones, the police found merchandise from Truck 'N Things in the apartment. They also found $59.00 hidden under a mattress and $75.00 in a purse. Jackie Alexander, also present during the search, testified that when Hammon and Jones arrived at the apartment at 11:30 a.m., they were carrying a box and some car spinners.[3] Shortly after arriving at the apartment, Hammon asked Alexander to take his black bag containing two guns to her "mama's house". Alexander took the bag to her friend Charlotte Beard's apartment instead and hid it in a closet. Charlotte Beard consented to a search of her

---

**2.** [1] The defendant was previously convicted of a felony involving the use or threat of violence to the person; [2] the defendant knowingly created a great risk of death to more than one person; [3] the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and [4] the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, § 701.12(1), (2), (5) and (7).

**3.** Car spinners are decorative devices attached to car wheels.

apartment where the police seized the black bag containing two .22 caliber weapons, one with three shots fired.

Both Hammon and Jones confessed to their participation in the robbery/homicide. Both confessions were admitted in their joint trial. Neither Hammon nor Jones testified nor put on evidence in first stage.

## PRE-TRIAL ISSUES

### I. SEVERANCE

In his second and third propositions of error, Hammon argues he was prejudiced by a joint trial with his co-defendant, Benny Jones. Hammon claims severance was required to avoid the extreme prejudice he suffered by the introduction of Jones' redacted confession. *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He contends the introduction of Jones' incriminating statements violated his right to confront witnesses against him and that the statements constituted inadmissible hearsay. The State argues severance was not required because the defenses of Hammon and Jones were not mutually antagonistic.

■ This Court has consistently held that the decision to grant or deny severance is left to the sound discretion of the trial court. *Neill v. State*, 827 P.2d 884, 886 (Okl.Cr. 1992). Absent an abuse of discretion resulting in prejudice to the accused, the decision of the trial court will not be disturbed on appeal. *Id.; Cooks v. State*, 699 P.2d 653, 658 (Okl.Cr.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Menefee v. State*, 640 P.2d 1381, 1383 (Okl.Cr. 1982).

■ We have consistently held severance is required if defenses are mutually antagonistic. *Neill*, 827 P.2d at 888. Defenses are mutually antagonistic where each defendant attempts to exculpate himself and inculpate his co-defendant. *Neill*, 827 P.2d at 887; *VanWoundenberg v. State*, 720 P.2d 328, 331 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107

S.Ct. 447, 93 L.Ed.2d 395 (1986). An attempt to cast blame on one's co-defendant is not in itself a sufficient reason to require separate trials. *Neill*, 827 P.2d at 886; *Fox v. State*, 779 P.2d 562, 567–68 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Master v. State*, 702 P.2d 375, 378 (Okl.Cr.1985). *See also United States v. Calabrese*, 645 F.2d 1379, 1384 (10th Cir.1981), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Each defendant must blame the other in an attempt to exonerate himself. Therefore, a showing that defenses conflict is not sufficient to show the requisite prejudice necessary for judicial severance. *Neill*, 827 P.2d at 886–87; *Vowell v. State*, 728 P.2d 854, 857 (Okl.Cr.1986).

■ The record shows the prosecution introduced both Hammon's and Jones' statements through Agent Page detailing their involvement in the Slape homicide and that neither Hammon nor Jones took the witness stand nor presented any witnesses or evidence in their own behalf during the first stage of trial. Hammon and Jones each relied solely on cross-examination of prosecution witnesses to show they were less culpable than the other. Utilizing this trial strategy, Jones' attorney was able to introduce the entirety of Jones' statement which inculpated Hammon.

The record, viewed in its entirety, clearly demonstrates that Hammon's and Jones' defenses were not antagonistic. In Hammon's statement he admitted planning to rob Truck 'N Things. He claimed he went to the back of the store where an employee was working on a pickup, pointed his gun at the employee and ordered him into the pickup. He returned to the front of the store and grabbed a box of car speakers and some car spinners. This is consistent with and not antagonistic to Jones' confession. Jones said he went into Truck 'N Things and approached the front counter as if he were going to purchase some merchandise. Jones

allowed Slape to ring up the sale and when the cash register drawer opened, he robbed him. Jones claimed Slape went for a gun so he shot him three times. The only inconsistency between Hammon's and Jones' statements related to their participation in an earlier robbery/shooting incident in Muskogee. In the Muskogee robbery/shooting incident Hammon claimed Jones shot both the cashier and a customer while he maintained a lookout outside the store with his gun drawn. Jones claimed he shot the customer and Hammon shot the clerk.

In *Fox*, this Court addressed a situation similar to the present case. Two defendants charged with felony-murder during the commission of an armed robbery sought severance. This Court stated that the issue is not whether factual inconsistencies between defendants' statements exist, but instead, whether each defendant attempted to completely exculpate himself and inculpate the other. *Id.* at 567. An examination of the statements in *Fox* showed that both defendants inculpated themselves of felony-murder. Because both defendants in *Fox* admitted planning and participating in the robbery, this Court was not concerned with which of the two actually pulled the trigger. *Id.* at 568. The factual inconsistencies in the statements did not render their defenses mutually antagonistic and therefore, severance was not required. *Id.*

In the present case neither Hammon nor Jones denied participating in the Truck 'N Things robbery. The only conflict between their voluntary statements concerned who shot the clerk in Muskogee, not who shot Slape. Neither Hammon nor Jones attempted to exculpate himself and inculpate the other. Therefore, their defenses were not mutually antagonistic. *Neill*, 827 P.2d at 887.

However, severance may be required if the State intends to introduce during a joint trial a defendant's confession which inculpates his codefendant. *See Bruton v. U.S.*, 391 U.S.

123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). "The purpose of a severance in such cases is to prevent the introduction of directly incriminating evidence without confrontation of the adverse party, in violation of the non-confessing co-defendant's Sixth Amendment rights." *Neill*, 827 P.2d at 893 (*quoting, Menefee*, 640 P.2d 1381, 1383 (Okl.Cr.1982)). In *Neill* this Court found that a *Bruton* violation occurs whether the error is instigated by the prosecution or by a co-defendant. *Neill*, 827 P.2d at 893.

In *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the Supreme Court restated that a nontestifying codefendant's confession, inculpating another codefendant, cannot be admitted at their joint trial because the constitutional right to confrontation is violated. A confrontation violation occurs even when the jury is instructed only to consider each defendant's statements against the party who made it. *Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719, 95 L.Ed.2d at 172. As discussed above, Agent Page summarized Hammon's and Jones' confessions leaving out all references to each other. However, during cross examination Jones' lawyer elicited from Page that Jones also made statements inculpating Hammon in both the Slape homicide and the earlier robbery/shooting incident in Muskogee. Because Jones did not testify, Hammon was deprived of the opportunity to confront him about the inculpatory statements. *Id.*

■ While the inculpatory statements should not have been admitted, we must now determine whether the error was harmless. This Court has continually held that when such a confrontation violation exists, the defendant must still demonstrate that the error was prejudicial. *See Keeling v. State*, 810 P.2d 1298, 1302 (Okl.Cr.1991); *Smith v. State*, 765 P.2d 795, 796 (Okl.Cr.1988); *Parsons v. State*, 740 P.2d 167, 169 (Okl.Cr.1987). When the properly admitted evidence is so overwhelming and the prejudicial effect of the statements is insignificant, the admission of the confession is harmless. *Smith*, 765 P.2d at 796.

In the present case, the properly admitted evidence against Hammon was overwhelming rendering the prejudicial effect of Jones' statements insignificant. Bradley Slape identified Hammon as the man who pointed a gun at his head and said "I said this is a fucking holdup." When Hammon was arrested shortly after the robbery/homicide, the police found items from Truck 'N Things in the apartment. Jackie Alexander testified Hammon and Jones were carrying a box of car speakers and car spinners when they arrived at Jones' apartment at 11:30. Alexander testified Hammon asked her to hide a bag which contained two .22 caliber guns. He also asked her to hide some money when the police knocked on the door. Several witnesses placed two men matching the description of Hammon and Jones in Truck 'N Things and near the scene of the robbery/homicide at the approximate time of the incident. Hammon's fingerprints were found in the stolen getaway car. Patrick White testified he saw Hammon and Jones in the stolen getaway car on June 28th in Okmulgee driving erratically. Lastly, Hammon confessed. While the admission of the inculpatory portions of Jones' statement was error, we find the error was harmless since the properly admitted evidence of guilt against Hammon was so overwhelming that it is clear beyond a reasonable doubt that the improper use of Jones' statement did not contribute to the verdict. *Schneble v. Florida*, 405 U.S. 427, 431, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 345 (1972). Accordingly, this proposition is denied.[4]

## II. DISCOVERY

In his seventh proposition of error Hammon argues he was denied a fair trial because the trial court improperly limited the scope of discovery and the State failed to comply with the trial court's discovery orders in violation of *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr. 1990), *modified by, Richie v. Beasley*, 837

P.2d 479 (Okl.Cr.1992). Hammon requests an evidentiary hearing to determine if any evidence was wrongfully withheld.

■ First, Hammon argues the trial court improperly restricted discovery to "only those items which had been delivered to the District Attorney's office." [5] Hammon claims effective discovery could have been frustrated by withholding evidence from the district attorney. He argues this restriction was improperly placed on the following items: [1] investigative notes of O.S.B.I. Agent Page; [2] police reports and notes made by police officers; [3] names of persons who advised Hammon of his *Miranda* [6] rights; [4] results of field tests administered on Hammon; [5] names and addresses of persons interviewed by the District Attorney's office or any law enforcement agency in relation to this case; and [6] any evidence observed by police witnesses and intended to be used against Hammon at trial which is not included in police reports.

Hammon fails to cite any specific evidence which was withheld and the record does not support his assertions. On March 26, 1991, the trial court heard lengthy, and often times misdirected, argument concerning discovery. Initially, Hammon's and Jones' lawyers requested copies of everything in the prosecution's file. The trial court denied this broad request and required counsel to make specific requests. The trial court included in the scope of its discovery order the prosecutor's staff and those who regularly report to the prosecutor.[7] The trial court noted the District Attorney has an obligation to find out if he has all the necessary information.[8] However, the trial court did not require the District Attorney to ask every possible officer who worked on the case, just those in command who would know who worked on the case.[9]

---

4. To avoid any *Bruton* error on remand, separate sentencing hearings should be conducted.

5. *See* Appellant's Brief at 52.

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. Mot.Tr. 3/26/91 at 83.

8. Mot.Tr. 3/26/91 at 115.

9. Mot.Tr. 3/26/91 at 83.

Hammon complains he was not provided Agent Page's notes. The record shows Hammon was provided with Agent Page's notes taken during his interviews with both Hammon and Jones.[10] At trial Agent Page testified he produced all of his reports, but not all of his notes. Recently in *Allen v. State*, 862 P.2d 487, 490–91 (Okl.Cr.1993), this Court declined to extend *Allen* to include prosecution witness work papers. This is consistent with this Court's prior holdings that the State is not required to produce notes of law enforcement officers because such notes constitute work-product. *Wilhite v. State*, 701 P.2d 774, 777 (Okl.Cr.1985). We continue to uphold the work-product exception to discoverable material and find Hammon was not entitled to Page's other work-product notes. *Wilhite*, 701 P.2d at 777.

Hammon argues he was denied police reports and notes. The trial court and prosecutor agreed Hammon was entitled to all police reports and notes in the possession of the prosecutor.[11] The trial court did not require the police to produce their work product notes. Hammon was provided with two O.S.B.I. reports and two police reports.[12] There is no evidence other reports were made and withheld from Hammon.

Hammon argues he was not provided the names of the officers who administered his *Miranda* rights. The trial court granted his request for such information.[13] The prosecutor advised that the only officers who advised Hammon of his *Miranda* rights were Agent Page and Detective Tolar.[14] Hammon was provided with a copy of the rights waiver he executed. The rights waiver stated Agent Page advised Hammon of his *Miranda* rights. The document is witnessed by Agent Page and Detective Tolar.[15] The State complied with the court's order.

Hammon argues he was not provided with the results of field tests. The court granted Hammon's request for this information. At the motion hearing the prosecutor advised he was not aware of any field tests being conducted.[16] The record is devoid of any evidence that any field tests were conducted, much less withheld.

Hammon argues he was not provided with a list of all the people interviewed by the District Attorney's office or law enforcement concerning his case. We recently held in *Richie v. Beasley*, 837 P.2d 479, 480 (Okl.Cr. 1992), if a defendant makes a request upon the prosecuting attorney to disclose the names and addresses of witnesses, the prosecuting attorney is required to provide the names and addresses of all persons known to the State having knowledge of relevant facts or information about the case. The trial court granted Hammon's request for the names and addresses of those persons interviewed concerning his case. The prosecutor advised at the motion hearing that he had "endorsed everybody that [he had] any information on at all in [his] office."[17] This included witnesses whom the prosecutor did not intend to call.[18] The State complied with the discovery order.

Hammon argues he was entitled to be apprised of any evidence intended to be used at trial which was observed by police, but not contained in any report. The trial court granted Hammon's request, but limited it to evidence known to the prosecution. The prosecutor advised there was not any such evidence of which he was aware. The record

---

10. Mot.Tr. 4/2/91 at 21.

11. Mot.Tr. 3/26/91.

12. Mot.Tr. 4/2/91 at 3.

13. Mot.Tr. 3/26/91 at 143.

14. Mot.Tr. 3/26/91 at 143.

15. Mot.Tr. 4/2/91 at 4.

16. Mot.Tr. 3/26/91 at 144.

17. Mot.Tr. 3/26/91 at 144.

18. Mot.Tr. 3/26/91 at 144.

does not indicate the State introduced any such evidence at trial. The State complied with the discovery order.

Hammon also claims the trial court erred in failing to order the State to produce all of its photographs. The trial court ordered the State to produce all of the photographs it intended to use at trial pursuant to *Allen*. Hammon claims other photographs were necessary to show that contrary to Bradley Slape's assertions, there were no shots fired in the back room of Truck 'N Things. The fact there was no evidence of gunfire in the back room of Truck 'N Things was clearly demonstrated through the photographs introduced at trial and through cross examination. We find the trial court's order complied with *Allen* and Hammon's complaint meritless. *Allen*, 803 P.2d at 1168.

Hammon also complains the State failed to produce the statements of Charlotte Beard and Patrick White and all of the fingerprint reports from O.S.B.I. Agent Mullins. Hammon argues the trial court must impose some sort of sanction provided in *Allen* for these violations.

In *Skelly v. State*, 880 P.2d 401, 408 (Okl. Cr.1994), this Court held when *Allen* violations occur, the trial court must fashion the appropriate relief. The record in the instant case shows Hammon was given a copy of White's statement at the April 2, 1991 motion hearing.[19] However, during trial White testified he gave a statement to an O.S.B.I. agent as well. A bench conference was held and the State advised that Detective Tolar had been in possession of statements from White and Beard and that he had lost them. The State advised it had rechecked its files and could not locate the statements. Hammon did not object to the testimony of either White or Beard, and now on appeal claims the trial court must impose a sanction for the *Allen* violation.

After listening to the argument of the prosecution, the trial court overruled Jones' motion to strike White's and Beard's testimo-ny. The trial court made no specific finding that its discovery order was violated. By its ruling, we can safely assume that the trial court believed the State had complied with its discovery order and produced all the evidence in its possession. Therefore, the trial court declined to impose any appropriate sanction.

Hammon finally argues the State failed to produce two reports issued by Agent Mullins. Agent Mullins testified he issued three reports of his fingerprint findings. The record indicates only Mullins' initial report was given to Hammon. Neither Hammon nor Jones objected to the testimony of Agent Mullins or argued reports were withheld. Agent Mullins testified he *believed* he sent his subsequent reports to the District Attorney. Because no record was made concerning these reports, we cannot conclude whether a violation of the trial court's discovery order occurred. On the record before us, we are unpersuaded the trial court abused its discretion in failing to sanction the State for any discovery violation. Accordingly, this proposition is denied.

## III. MOTION FOR EXPERTS

Hammon argues he was denied a fair trial because the trial court refused to provide funds for psychological testing and a private investigator. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

Hammon filed a motion for funds to conduct a psychological evaluation. In his motion he stated he had a medical history of seizures at various times during the past four (4) years, thus raising a question as to whether he suffers from a brain disease or other mental disease. The trial court heard argument on Hammon's motion after arraignment on January 8, 1991. Given the severity of the case the State advised that a competency evaluation would be appropriate if Hammon and Jones agreed to waive the appropriate notice requirements. The court granted the motion for psychological evaluation. The

---

19. Mot.Tr. 4/2/91 at 2.

court specifically ordered Eastern State Hospital or their doctors to answer the standard competency questions [20] in their report.

A post examination competency hearing was held February 13, 1991 at which time the State called Jeanne Russell, a psychologist at Eastern State Hospital. The trial court admitted Russell's report finding Hammon competent to stand trial. On cross examination Russell testified that her records did not reflect a psychiatric examination was conducted, but said everyone is seen by a psychiatrist upon admission. Russell testified she believed Dr. Nunyez was Hammon's doctor while he was at Eastern State Hospital and that Hammon received medication for his seizures. Russell testified she saw no need to run any psychological evaluation tests other than the competency screening test ordered by the trial court.

Hammon renewed his motion for psychological testing because Eastern State Hospital had not conducted a complete psychological examination "to determine whether there was any opportunity to have a defense in this case." [21] Defense counsel argued Hammon's seizures "could certainly have a bearing upon his physical and mental disabilities which in turn would have a bearing upon competency." [22] The trial court denied Hammon's request to return him to Eastern State Hospital for further testing finding him competent to stand trial.

In *Ake*, 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66, the Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." This holding is not limited to issues in the guilt/innocence stage of the proceeding, but also applies to the punishment stage of the proceeding when "the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer...." *Id.* at 80, 105 S.Ct. at 1095, 84 L.Ed.2d at 64.

In the instant case Hammon failed to demonstrate that his sanity at the time of the offense was likely to be a significant factor. Hammon claimed in his motion he had seizures at various times for a period of four years prior to the Slape homicide. At no time did he offer evidence from any source to document his claim that he had seizures before, during or after the crime. Counsel simply argued the seizures could have some bearing on his *competency*. Based on counsel's argument, the trial court granted Hammon's motion and ordered a competency examination. The only evidence admitted at the post examination competency hearing was Russell's report finding Hammon competent to stand trial. Such evidence compels us to find Hammon failed to meet his burden of establishing need for further psychological examination.

Hammon also argues the trial court erred in denying his request for state funds to hire a private investigator. Hammon relies on 22 O.S.Supp.1985, § 464(B) and *Ake*.

During the instant case 22 O.S.Supp.1985, § 464(B) had not been repealed. Section 464(B) allowed the district court, in its discretion, to authorize defense counsel in a capital case to obtain services which were reasonably necessary to permit the defendant to adequately prepare and present his

---

**20.** 1) Is this person able to appreciate the nature of the charges against him? 2) Is this person able to consult with his lawyer and rationally assist in the preparation of his defense? 3) If the answer to question 1 or 2 is no, can the person attain competency within a reasonable time if provided with a course of treatment, therapy or training? 4) Is the person a mentally ill person or a person requiring treatment as defined by Section 1–103 of Title 43A? 5) If the person were released without treatment, therapy or training, would he probably pose a significant threat to the life or safety of himself or others? 22 O.S.Supp.1990, § 1175.3.

**21.** Mot.Tr. 2/13/91 at 16.

**22.** Mot.Tr. 2/13/91 at 17.

defense at trial. *Smith v. State*, 819 P.2d 270, 274 (Okl.Cr.1991), *cert. denied*, 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). However, section 464(B) provided "[n]o application for compensation of such expert witnesses and other services shall be heard by the trial court prior to final trial disposition." As in *Smith* Hammon's application for approval of funds was filed prematurely. *Smith*, 819 P.2d at 274.

■ Moreover, before the statute authorizes access to expert services, a capital defendant must demonstrate that the services are necessary and that he is financially unable to pay for them. *Id.* See also *Stafford v. Love*, 726 P.2d 894, 896 (Okl.1986). The record on Hammon's application shows that defense counsel informed the court, without citing any specifics, that he needed the assistance of an investigator to interview witnesses and investigate the case. This Court continues to hold that defendants must make a sufficient showing that such an expert is necessary to prepare an adequate defense. *Castro v. State*, 844 P.2d 159, 175 (Okl.Cr. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993). As in *Castro* there does not appear to be a great risk of error by denying Hammon's request for this investigator. *Id.* While Hammon's attorney may have had a large list of witnesses to interview before trial, we find this alone, without specific testimony, insufficient to meet the requirements of *Ake*. *Id.*

### IV. COMPETENCY

Hammon argues his competency hearing should be held null and void because there was no showing he was advised of his right to a jury trial on the issue of competency. Hammon likens his case to *Gilley v. State*, 848 P.2d 578 (Okl.Cr.1992), in which this Court held juveniles must be apprised of their right to apply for reverse certification as a child to the juvenile system.

As discussed above Hammon moved the court for a psychological evaluation. The State agreed that a competency evaluation would be appropriate if Hammon and Jones agreed to waive the appropriate notice requirements. Hammon specifically waived all notice requirements pursuant to 22 O.S.Supp. 1983, § 1175.2(B) including notice of right to jury trial.

■ In *Miller v. State*, 751 P.2d 733, 738 (Okl.Cr.1988), this Court held there is no right under the Sixth and Fourteenth Amendments of the United States Constitution, or under Art. II, §§ 19 or 20, of the Oklahoma Constitution, to a jury trial in a competency hearing. The right to have a jury hear the question of the accused's competency is statutory and must be demanded. *Miller*, 751 P.2d at 738. Because Hammon waived the notice requirements and did not assert his right to a jury trial, we find this proposition is without merit.

Hammon further argues this Court should invalidate the trial court's finding of competency because it did not have the benefit of a report from A. Eugene Reynolds finding Hammon mildly retarded.[23] Because the question whether an accused is competent is one of fact, we review the record to determine if there is valid evidence which tends to support the trier of fact's determination. *Valdez v. State*, 900 P.2d 363 (Okl.Cr.1995). Reynolds' report in no way indicates Hammon was incompetent to stand trial. It is therefore difficult to conclude that the admission of Reynolds' report would have altered the trial court's finding of competency.

■ The record supports the trial court's finding of competency using the *Dusky* standard.[24] Jeanne Russell, state psychologist, concluded Hammon was aware of the charges against him and recalled the circumstances

---

**23.** Hammon supplemented the record with an affidavit from A. Eugene Reynolds, clinical psychologist, who concluded that Hammon is mildly retarded (IQ 67), has a low level of intellectual functioning and has probably suffered organic brain damage.

**24.** *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960) (holding the test to determine competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree

surrounding the crime. She concluded he was aware of the consequences of a conviction. Russell also concluded Hammon was able to consult with his attorney and to assist in his defense although he lacked confidence in his appointed lawyer's abilities. Hammon displayed a rational as well as a factual understanding of the proceedings against him. The record contains sufficient evidence to support the trial court's finding that Hammon was competent to stand trial. Accordingly, this proposition is denied.

## JURY SELECTION ISSUES

### I. LIFE QUALIFYING THE JURY

In his first proposition of error Hammon argues he was denied due process of law and trial by an impartial jury. He contends the trial court erred in refusing to allow defense counsel to inquire whether a potential juror would automatically impose the death penalty upon a finding of guilt.[25] *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

The trial court conducted the death qualifying portion of voir dire.[26] However, both prior to voir dire and after death qualifying the venire panel, Hammon's and Jones' lawyers [27] moved to question the jury about the other penalties i.e. life and life without parole. The trial court refused. In response to the adverse ruling Hammon's and Jones' lawyers jointly offered a paper entitled *Voir Dire in Capital Punishment Cases* authored by Robert A. Ravitz as an offer of proof stating they would ask all of the questions suggested in the paper. Specifically noted by Jones' counsel was the question:

Ladies and Gentlemen of the Jury, you have indicated your ability to impose the death penalty in a proper case. Is there anyone who believes that in a first degree murder conviction, automatically you must impose the death penalty, regardless of other circumstances and facts in this case.

The trial court refused to allow either counsel to so inquire.

In *Morgan*, the Supreme Court found that "[a] juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." *Morgan*, 504 U.S. at 729, 112 S.Ct. at 2229, 119 L.Ed.2d at 502. Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains that the death penalty should automatically be imposed upon a finding of guilt. *Morgan*, 504 U.S. at 727–31, 112 S.Ct. at 2229–30, 119 L.Ed.2d at 503. "If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." *Morgan*, 504 U.S. at 729, 112 S.Ct. at 2230, 119 L.Ed.2d at 503.

The State raises no challenge to the foregoing precepts, but argues instead that other questioning during voir dire assured Hammon a fair and impartial jury able to follow the law.[28] Part of the guaranty of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors. *Id.; Dennis v. United States*, 339 U.S. 162, 171–172, 70 S.Ct. 519, 523–524, 94 L.Ed. 734

---

of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.)

**25.** Such inquiry is often referred to as "life qualifying" the jury or "reverse *Witherspoon*" questioning (*See Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)).

**26.** Judge Moroney called each juror individually into chambers and asked, "[i]n a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death

penalty?" Those prospective jurors who said they could not impose the death penalty under any circumstances were excused for cause.

**27.** Appellant Hammon was represented by Duane A. Woodliff of Henryetta, Oklahoma. Benny Jones was represented by Thomas H. Stringer, Jr. of Henryetta, Oklahoma.

**28.** The same argument was raised by the State of Illinois and rejected in *Morgan*. *Id.* at 729–31, 112 S.Ct. at 2230, 119 L.Ed.2d at 503.

(1950); *Morford v. United States,* 339 U.S. 258, 259, 70 S.Ct. 586, 587, 94 L.Ed. 815 (1950). "Hence, '[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness.'" *Morgan,* 504 U.S. at 730, 112 S.Ct. at 2230, 119 L.Ed.2d at 503 *(quoting, Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471–472, 75 L.Ed. 1054 (1931)).

This Court must decide whether the questions propounded during voir dire were sufficient to satisfy Hammon's right to exercise intelligently his unlimited challenges for cause against those biased persons on the venire who as jurors would unwaveringly impose death after a finding of guilt. Prior to voir dire of the venire, the trial court made a few preliminary announcements regarding seating. The trial court did not give any of the introductory uniform instructions and nowhere did the trial court advise the potential jurors of the other penalties. *See* OUJI–CR 100–105. Every juror eventually empaneled was asked generally, and some specifically, whether they could be fair and impartial, follow the court's instructions, hold the State to its burden of proof, arrive at a verdict based on their own assessment of the evidence and arrive at a punishment based on their own convictions. When empaneled, each member of the jury further swore an oath to "well and truly try the issues in this cause now on for hearing, and a true and just verdict render according to the law and the evidence."

 As noted above, the State suggests that general fairness and "follow the law" questions of the like asked during voir dire were sufficient to detect those in the venire who automatically would vote for the death penalty. This argument was specifically rejected by the *Morgan* court. *Morgan,* 504 U.S. at 732–34, 112 S.Ct. at 2232, 119 L.Ed.2d at 506. The *Morgan* court was not convinced that such general inquiries could

detect those jurors with views preventing or substantially impairing the exercise of their duties in accordance with their instructions and oath. *Morgan,* 504 U.S. at 734–36, 112 S.Ct. at 2233, 119 L.Ed.2d at 506.

The Court noted that general questions of fairness and impartiality leave the specific concern unprobed. *Id.* A defendant on trial for his life must be permitted on voir dire to ascertain whether his prospective jurors function under the belief that upon conviction the death penalty should automatically be imposed. *Morgan,* 504 U.S. at 734–36, 112 S.Ct. at 2233, 119 L.Ed.2d at 507. As in *Morgan,* the risk that such jurors may have been empaneled in this case and infected Hammon's capital sentencing is unacceptable. *Id.* Hammon was entitled, upon his request, to inquire of prospective jurors whether they would unwaveringly impose death after a finding of guilt. *Id.*

We are unpersuaded that this error infected the entire proceedings. We find such error only affects the jurors' ability to render punishment, not their ability to weigh the evidence and determine guilt. Accordingly, this case must be remanded to the district court and a new sentencing hearing conducted. *See Illinois v. Smith,* 152 Ill.2d 229, 178 Ill.Dec. 335, 354, 604 N.E.2d 858, 877 (1992).

## II. PEREMPTORY CHALLENGES

Hammon argues he was denied a fair trial because the trial court denied him nine separate peremptory challenges.[29] He maintains that his theory of defense was inconsistent with co-defendant Jones in both stages of trial and therefore he was entitled to nine separate peremptory challenges. 22 O.S. 1981, § 655.

The State argues that under 22 O.S.1981, §§ 622 and 655, Hammon and Jones were properly required to join in their challenges. Section 622 provides that "[w]hen several

---

29. The trial court granted Hammon and Jones a total of ten peremptory challenges to be shared

between them. (M.Tr. 4/8/91 at 26–27)

defendants are tried together they cannot sever their challenges, but must join therein." Section 655 specifically provides an exception to the § 622 rule when the defenses are inconsistent. Section 655 states in pertinent part, that co-defendants tried jointly shall join in their challenges "provided, that when two or more defendants have *inconsistent* defenses they shall be granted separate challenges for each defendant as hereinafter set forth." (Emphasis added).

In *Neill*, 827 P.2d at 891, this Court stated the general rule that co-defendants tried in a single trial must share peremptory challenges, provided that co-defendants tried jointly who have inconsistent defenses shall be granted separate peremptory challenges. However, the *Neill* court made a distinction between cases in which the "inconsistency" goes to the level of culpability and those in which the "inconsistency" goes to guilt or innocence. *Id.*

> Where the issue is restricted to the level of each co-defendant's culpability, co-defendants may be required to share peremptory challenges. *See Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Fowler v. State,* 779 P.2d 580 (Okl. Cr.1989); *Master v. State,* 702 P.2d 375 (Okl.Cr.1985); *Wilhite v. State,* 701 P.2d 774 (Okl.Cr.1985); *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985). *See also James v. State,* 736 P.2d 541 (Okl.Cr.1987), *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); *Van-Woundenberg v. State,* 720 P.2d 328 (Okl. Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); on post-conviction, affirmed, unpublished, PC–87–633; *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 780 (1988). However, where the 'inconsistency' in the defenses relates directly to guilt or innocence, co-defendants must be granted separate challenges. *Murray,* 528 P.2d at 740. *Neill,* 827 P.2d at 891.

In the instant case, Hammon conceded his guilt from opening statement. He simply argued that he did not do the actual shooting and therefore was less culpable. Jones argued he was less culpable because of his youth and lack of a violent criminal past. Any inconsistency in Hammon's and Jones' defenses went to their level of culpability and therefore, it was not error to deny Hammon nine separate peremptory challenges. *Neill,* 827 P.2d at 891.

Hammon asks this Court to interpret § 655 to require separate peremptory challenges for jointly tried defendants with inconsistent defenses as to other crimes not charged. Hammon fails to cite any authority on point and we are unpersuaded to find section 655 requires separate peremptory challenges under these facts. Accordingly, this proposition is denied.

## ISSUES RELATING TO GUILT/INNOCENCE

### I. OTHER CRIMES EVIDENCE

In his fifth proposition of error Hammon complains the admission of improper other crimes evidence rendered his trial unfair. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1971), *overruled in part on other grounds in, Jones v. State,* 772 P.2d 922 (Okl.Cr.1989); 12 O.S. 1981, §§ 2403, 2404. The State maintains the other crimes evidence was properly admitted as part of the res gestae or under the common scheme or plan exception. *Salazar v. State,* 852 P.2d 729, 736 (Okl.Cr.1993), *reh'g denied,* 859 P.2d 517 (1993); *Dunagan v. State,* 755 P.2d 102, 104 (Okl.Cr.1988).

Both Hammon and Jones filed motions in limine to prevent the State from introducing evidence concerning a robbery/shooting incident in Muskogee perpetrated by Hammon and Jones approximately six hours prior to the Slape robbery/homicide (hereinafter the Muskogee robbery/shooting).[30] These motions were overruled and the State was al-

---

30. Hammon and Jones drove to Muskogee and robbed Bud's Convenience Store. During the robbery the clerk and a customer were shot. Both victims recovered and Hammon and Jones

lowed to introduce Hammon's and Jones' statements regarding the Muskogee robbery/shooting and the testimony of the two victims of the Muskogee robbery/shooting. The State also introduced evidence that after the Muskogee robbery/shooting, Hammon and Jones stole a vehicle from a nearby apartment complex and returned to Okmulgee.

The State filed a *Burks* notice prior to trial detailing the other crimes evidence it intended to introduce and the trial court submitted a limiting instruction on this other crimes evidence prior to its introduction and again in the jury charge. In its limiting instruction, the trial court advised the jury that the "other crimes" evidence was being introduced to prove a common scheme or plan.

In *Luna v. State*, 829 P.2d 69, 72 (Okl.Cr. 1992) (*quoting, Blades v. State*, 619 P.2d 875, 878–79 (Okl.Cr.1979), *cert. denied*, 449 U.S. 845, 101 S.Ct. 129, 66 L.Ed.2d 54 (1980)), we said:

> A common scheme or plan contemplates some relationship or connection between the crimes in question.... The word, "common" implies that although there may be various crimes, all said crimes must come under one plan or scheme whereby the facts of one crime tend to establish the other such as where the commission of one crime depends upon or facilitates the commission of the other crime, or where each crime is merely a part of a greater overall plan. In such event, the crimes become connected or related transactions, and proof of one becomes relevant in proving the other. However, evidence of other offenses should never be admitted under this exception when it shows that the accused committed crimes wholly independent of that charged. (Citations omitted).

The Muskogee robbery/shooting was not, as the State argues, part of a common scheme or plan. The Muskogee robbery/shooting was independent of and complete prior to the robbery/homicide tried in the case at bar. Simply because two robberies occur on the same day does not establish a common scheme.[31] The Muskogee robbery/shooting was not dependent on and did not facilitate the robbery/homicide. Proof of the Muskogee robbery/shooting in no way proved the robbery/homicide in Okmulgee and its admission was error. *Id.*

The introduction of the Muskogee robbery/shooting likewise cannot be sustained under any of the other recognized "other crimes" exceptions including res gestae as advocated by the State. The crimes were not a continuing transaction, nor was evidence of the Muskogee robbery/shooting necessary to make the events logical. *See Rogers v. State*, 890 P.2d 959, 971 (Okl.Cr.1995); *Burks v. State*, 594 P.2d at 772; *Childers v. State*, 764 P.2d 900, 904 (Okl.Cr.1988); 12 O.S.1981, § 2404.

The question we must now answer is whether the admission of the Muskogee robbery/shooting warrants relief. The error was preserved through defense counsel's timely objection. Therefore, the burden is on the State to show that the admission error did not "result[ ] in a miscarriage of justice, or constitute[ ] a substantial violation of a constitutional or statutory right...." *Valdez*, 900 P.2d at 380. *See also* 20 O.S.1981, § 3001.1. The State presented conclusive evidence Hammon participated in an armed robbery in which a death occurred. Hammon not only confessed, but Bradley Slape, the surviving victim, identified Hammon as one of the perpetrators. Hammon was also found in the possession of items taken from Truck 'N Things. In light of the overwhelming evidence of guilt, we find the admission of the Muskogee robbery/shooting did not contribute to the verdict. *Valdez*, 900 P.2d at

---

were convicted in the District Court of Muskogee County of two counts of Robbery with a Dangerous Weapon, two counts of Shooting with Intent to Kill and one count of Larceny of a Vehicle. Those convictions were affirmed by this Court. *See Hammon v. State*, No. F–91–755, Not for Publication (Okl.Cr. July 26, 1994); *Jones v.*

*State*, No. F–91–844, Not for Publication (Okl.Cr. July 26, 1994).

**31.** We also reject the State's argument to create a crime spree exception under these facts.

380; *Sattayarak v. State,* 887 P.2d 1326, 1332 (Okl.Cr.1994). Therefore, this proposition is denied.

## II. DOUBLE JEOPARDY

In his sixth proposition of error, Hammon complains his convictions for using a firearm while in the commission of a felony, feloniously pointing a weapon, concealing stolen property and possession of a stolen vehicle violate the prohibitions against multiple punishment. *See* U.S. Const. amend. V; Okla. Const., art. II, § 21; 21 O.S.Supp.1987, § 11. He claims his convictions for using a firearm while in the commission of a felony, feloniously pointing a firearm and concealing stolen property are subsumed in his conviction for felony murder. He further claims he was punished for possession of a stolen vehicle in his previous Muskogee conviction for larceny of a vehicle.

 We recently addressed the proper analysis of multiple punishment claims in *Hale v. State,* 888 P.2d 1027 (Okl.Cr.1995). First, this Court will review such claims employing a section 11 [32] analysis and only where section 11 does not apply will this Court engage in traditional double jeopardy analysis. *Hale,* 888 P.2d at 1029. If a single criminal act gives rise to offenses which are not separate and distinct, are a means to another ultimate objective, are lesser included offenses, or are incidents or facets of some other offense, section 11 forbids punishing such conduct under more than one statute. *Id.*

In the present case, Hammon was charged with six (6) crimes arising from one criminal episode. We must determine if these offenses are distinct and separate, if they are mere means to some other ultimate objective, if they are offenses included in some other offense, or are merely different incidents or facets of some primary offense. *Id.*

### A. WEAPON USE IN COMMISSION OF CRIME

 Hammon's conviction for using a firearm while in the commission of a felony must be reversed. The same act of using a firearm during the robbery was punished under two statutes. First, Hammon was punished for using the firearm during the robbery in his felony murder conviction. (21 O.S.Supp.1989, § 701.7(B)) The State had to prove Hammon used a gun in the robbery to prove the underlying felony of robbery with a dangerous weapon. 21 O.S.1981, § 801. Second, Hammon was punished for using the firearm during the robbery in his conviction for using a firearm while in the commission of a felony. Again, the State had to prove Hammon used a gun to prove he used a firearm while in the commission of the felony of robbery with a dangerous weapon. *See* 21 O.S.Supp.1982, § 1287. Because § 11 forbids punishment of the same act under two separate statutes, we find Hammon's conviction for using a firearm while in the commission of a felony must be reversed and remanded to the district court with instructions to dismiss.

### B. FELONIOUSLY POINTING A FIREARM

 Hammon, relying on *Ocampo v. State,* 778 P.2d 920, 924 (Okl.Cr.1989), argues his conviction for feloniously pointing a weapon was subsumed in his felony murder conviction. In *Ocampo,* this Court held prosecution for use of a firearm while committing a felony and feloniously pointing a weapon violated the prohibition against double jeopardy. In so holding, we found both offenses were means to the ultimate objective of escape, both offenses were directed toward the same victim, and both offenses required proof of similar elements pursuant to 21 O.S.1981, § 1287 and § 1289.16. *Id.* Under the "same evidence" test, we found that the appellant was being punished twice for the same act of using a gun and reversed with instructions to dismiss his conviction for feloniously pointing a firearm. *Id.*

Hammon was convicted of feloniously pointing his gun at Bradley Slape, not Eugene Slape, during the commission of the

**32.** 21 O.S.Supp.1987, § 11.

robbery. To convict Hammon of felony murder, the State had to prove the death of Eugene Slape occurred during the commission of the predicate felony of robbery with a firearm. If Hammon were convicted of feloniously pointing a firearm at Eugene Slape, this act would be subsumed in his conviction for felony murder and punishment would be barred by section 11. However, Hammon's conviction is for pointing his gun at Bradley Slape which required the State to prove a separate act of pointing a weapon. *Ocampo*, 778 P.2d at 924. We find Hammon's conviction is not barred by section 11 or double jeopardy.

## C. POSSESSION OF A STOLEN VEHICLE

■ Hammon argues he was punished twice for stealing a vehicle in Muskogee. He claims the charge of possessing a stolen vehicle was included and punished in his conviction for larceny of that vehicle. We agree. Hammon was convicted in the District Court of Muskogee County of larceny of the vehicle he was convicted of possessing hours after the Slape homicide. Both the theft and the possession occurred on the same day within hours. To complete the crime of larceny, Hammon had to carry away the vehicle with the intent to permanently deprive its owner of the vehicle's use or value. Hammon had to necessarily possess the vehicle to be convicted of stealing it. The act of possession was merely a different facet or incident of the primary offense of larceny. 21 O.S.Supp. 1987, § 11. Accordingly, we find Hammon's conviction for possession of a stolen vehicle must be reversed and remanded to the district court with instructions to dismiss. *Shackelford v. State*, 481 P.2d 163, 165–66 (Okl.Cr.1971).

## D. CONCEALING STOLEN PROPERTY

■ Lastly, Hammon argues he was punished twice for stealing car speakers and car spinners from Truck 'N Things. He claims the act of knowingly concealing stolen property is included in the act of robbery. Again, we must agree. To complete the crime of robbery Hammon had to carry away the car speakers and car spinners. The concealment of the property immediately after the robbery was incident to the primary offense. 21 O.S.Supp.1987, § 11. Accordingly, we find Hammon's conviction for concealing stolen property must be reversed and remanded to the district court with instructions to dismiss.

## III. PROSECUTORIAL MISCONDUCT

Hammon argues prosecutorial misconduct deprived him of a fair trial. He argues the prosecutor failed to comply with the trial court's discovery orders, made arguments implying facts not in evidence, misstated the law, encouraged the jurors to sympathize with the victim, improperly criticized Hammon and encouraged the jury to believe that it had a duty to find for the State.

■ First, Hammon argues the prosecutor improperly withheld evidence from the defense in violation of *Allen v. District Court of Washington County*, 803 P.2d 1164 (1990), *modified by, Richie v. Beasley*, 837 P.2d 479 (Okl.Cr.1992), and counseled State's witnesses to avoid Hammon's and Jones' lawyers. As discussed earlier, the trial court never made a finding that the State failed to comply with its discovery order. The State explained that it produced all evidence within its control as prescribed by the order. We cannot find that the prosecutor was guilty of misconduct by failing to provide Hammon with White's and Beard's statements containing their conversation with law enforcement officers where the statements had been lost and attempts to locate them were futile. Without a finding that the State violated the trial court's order, we refuse to find the prosecutor guilty of misconduct.

Second, Hammon complains the prosecutor denied him access to his witnesses, specifically Ron Jones, an O.S.B.I. Firearms and Toolmark Examiner. After Ron Jones was qualified as an expert, co-defendant Jones objected to his testimony. An in camera hearing

was held whereupon Ron Jones was voir dired by the State and co-defendant Jones' lawyer. Ron Jones testified that he contacted the prosecutor after a telephone conversation with co-defendant Jones' lawyer in which co-defendant Jones' lawyer asked to discuss his testimony. Ron Jones advised that it was O.S.B.I. policy not to discuss cases without approval from the prosecutor. The prosecutor advised Ron Jones that "it's our policy that we don't talk to defense attorneys about pending cases." [33]

■ Hammon's lawyer specifically advised the trial court that he had no objection to Ron Jones' testimony or the admission of his report. There is no evidence Hammon's lawyer ever tried to interview Ron Jones and was denied. We do not find the prosecutor's statement of office policy constitutes misconduct. The prosecutor never forbade Ron Jones from talking to defense counsel. Furthermore, the prosecutor per the court's order provided Jones' report to both Hammon's and co-defendant Jones' lawyers. We find this proposition is without merit.

■ Hammon complains the prosecutor improperly argued facts not in evidence. [34] He specifically cites the prosecutor's remarks concerning the testimony of Charles Reeves, one of the victims in the Muskogee robbery/shooting. The prosecutor argued Reeves testified that Hammon said "no witnesses." In fact, Mr. Reeves could not identify Hammon or Jones as the men in the store. He identified his assailants by referring to them as the taller man and the shorter man. Reeves testified the shorter man said "no witnesses." [35] Defense counsel objected to the prosecutor's argument. [36] The trial court admonished the jury, "[j]ust remember the evidence, that [Reeves] said the short one." [37]

"When determining whether a prosecutor's closing remarks were outside the record and so prejudicial as to warrant a reversal, the error is to be considered in light of the evidence and whether the remarks can be said to have influenced the verdict against the appellant." *Woodruff v. State*, 846 P.2d 1124, 1140 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993). We have previously held that the trial court's sustaining of an objection was sufficient to cure any error which may have occurred. *Id.* Further, admonishment cures all but plain error. *Roberts v. State*, 868 P.2d 712, 721 (Okl.Cr.1994). Were error present here, it would not rise to the level of plain error in light of the otherwise overwhelming evidence supporting Hammon's conviction. Therefore, we find the trial court's admonishment cured any error.

Hammon argues the prosecutor attempted to define reasonable doubt during voir dire and misstated the law on corroboration of confessions during closing argument. Hammon complains that the prosecutor's statement that "beyond a reasonable doubt" did not mean beyond any doubt or beyond a shadow of a doubt constitutes an impermissible attempt to define reasonable doubt.

■ We have upheld similar statements by prosecutors that "reasonable doubt does not mean beyond any doubt or beyond a shadow of a doubt." *Lenard v. State*, 796 P.2d 636, 638 (Okl.Cr.1990). Such comments do not constitute error. *Id.* When read in context the comments complained of were merely attempts by the prosecution to dispel commonly held attitudes rather than attempts to define reasonable doubt. *Id.* Accordingly, no error resulted from these comments.

Hammon further complains the prosecutor misstated the law concerning the use of con-

---

**33.** Tr. at 526.

**34.** Because this case must be remanded for resentencing, only first stage comments will be addressed.

**35.** Tr. at 619.

**36.** Tr. at 917.

**37.** Tr. at 917.

fessions in murder cases.[38] Hammon argues the prosecutor improperly argued "that all the state had to do to meet its burden of corroborating Appellant's confessions was to was (sic) prove that the victim was dead and that his death was caused by another person."[39]

Hammon argues this is a misstatement because the State did not argue it must show substantial independent evidence establishing the trustworthiness of the defendant's confession. *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954); *Williamson v. State,* 812 P.2d 384, 396 (Okl. Cr.1991), *cert. denied,* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). While the State must show substantial independent evidence establishing the trustworthiness of the defendant's confession, *see Fontenot v. State,* 881 P.2d 69, 78 (Okl.Cr.1994), this does not render the argument of the State inaccurate. The prosecutor's argument was a proper statement of the corpus delicti rule as codified in 21 O.S.1981, § 693. Therefore, we find no error.

Hammon next complains the prosecutor improperly played upon the sympathies of the jury for the victim. He specifically complains about the prosecutor's opening statement in which he said:

Thursday, June 28th, 1990. It was a normal day in most of our lives. It began as a normal day for Gene Slape and his son, Brad. Mr. Slape is a man who started his business from scratch. He supported his family from it and even employed some of his family.

One (sic) June 28th, because of these two defendants, that all came to an end. He lost his business, he lost his family, and he lost his life.

This case is about two men right here (indicating), who have total disregard for the lives of others . . .

Defense counsel objected and the trial court cautioned the State to "stick" to what the evidence would be.

The purpose of opening statement is to apprise the jury of the evidence the attorneys expect to present during trial. *Eddings v. State,* 842 P.2d 759, 761 (Okl.Cr. 1992). The scope of opening statement is committed to the sound discretion of the trial court. *Newsted v. State,* 720 P.2d 734, 738 (Okl.Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (Okl.Cr.1986). After a careful review of the record, we find the comments, while bordering on argument, were supported by subsequent evidence and thus were fair comment. *Johnson v. State,* 714 P.2d 214, 215 (Okl.Cr.1986).

Hammon argues the prosecutor improperly demeaned and ridiculed him. The prosecutor told an anecdote using pigs as characters; the moral of the story was that you are what you are no matter how you try to disguise it. The prosecutor then argued Hammon was a thief, a robber, a possessor of stolen property and a murderer, contrary to any of his counsel's assertions.

The above argument was not met with a contemporaneous objection.[40] Failure to object results in waiver of the issue on

---

**38.** The prosecutor argued:

Now, turning your attention to Instruction No. 18. Instruction No. 18 [which mirrors OUJI–CR–815] deals with only the charge of Murder in the First Degree. It says:

"No person may be convicted of Murder in the First Degree unless both the fact of the death of the person allegedly killed and the fact that his death was caused by the conduct of another person are established as independent facts and beyond a reasonable doubt."

Ladies and Gentlemen of the Jury, to boil that down in simple terms, the State of Oklahoma has to show you, in addition to the confes-

sion—in addition to the confession—that Gene Slape is dead and that he didn't commit suicide. That's what his (sic) instruction says. This instruction says you have to show the fact of the death of the person and the fact that his death was caused by the conduct of another person. That means not by himself. (Tr. at 882)

**39.** *See* Appellant's Brief at p. 63.

**40.** At the conclusion of the State's argument, defense counsels moved for a mistrial based on "highly prejudicial statements of the prosecutor."

appeal and this Court will review the argument only for plain error. *Freeman v. State,* 876 P.2d 283, 287 (Okl.Cr.1994); *Shelton v. State,* 793 P.2d 866, 872 (Okl.Cr.1990). This Court will not reverse a conviction for prosecutorial misconduct unless the State's argument is so flagrant and of such a nature as to be prejudicial to the defendant. *Freeman,* 876 P.2d at 287; *Romano v. State,* 847 P.2d 368, 380 (Okl.Cr.1993), *aff'd,* — U.S. —, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

 We are continually astounded that experienced prosecutors jeopardize cases, in which the evidence is overwhelming, with borderline argument. However, we have reviewed the prosecutor's conduct and comments in their entirety and in comparison to the great weight of evidence presented, we find his conduct and comments did not contribute to the verdict. *Pickens v. State,* 850 P.2d 328, 343–44 (Okl.Cr.1993), *cert. denied,* — U.S. —, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994).

 Next, Hammon argues the prosecutor improperly argued the jury had a moral duty to convict him. Again, Hammon failed to object thus waiving the issue on appeal unless this Court finds plain error. *Freeman,* 876 P.2d at 287; *Shelton,* 793 P.2d at 872. As stated above this Court will not reverse a conviction for prosecutorial misconduct unless the State's argument is so flagrant and of such a nature as to be prejudicial to the defendant. *Freeman,* 876 P.2d at 287; *Romano,* 847 P.2d at 380.

In light of the strong evidence of guilt against Hammon, and the failure to properly preserve the error for review, we find that the prosecutor's remarks did not undermine confidence in the jury's verdict so as to require reversal or modification.

Lastly, Hammon argues the combined effect of the prosecutor's statements was so prejudicial that he was deprived of a fair trial and therefore failure to properly preserve the issue for appeal is irrelevant. We have

reviewed the prosecutor's conduct and comments in their entirety and in comparison to the great weight of evidence presented, we find the prosecutor's comments, neither individually nor taken together, contributed to the verdict. *Pickens,* 850 P.2d at 343–44.

## IV. INSTRUCTIONS TO THE JURY

Hammon argues he was denied a fair trial because the trial court misinstructed the jury and failed to give his requested instruction on murder in the second degree.

First, Hammon argues the trial court improperly instructed the jury on the issue of corroboration of a confession in first degree murder cases. Hammon argues Instruction No. 18 fails to advise the jury that confessions must be corroborated by substantial evidence establishing their trustworthiness. *Opper v. United States,* 348 U.S. at 93, 75 S.Ct. at 164; *Williamson v. State,* 812 P.2d at 396.

Instruction No. 18 [41] stated:

**No person may be convicted of Murder in the First Degree unless both the fact of the death of the person allegedly killed and the fact that his death was caused by the conduct of another person are established as independent facts and beyond a reasonable doubt.** Such proof must consist of evidence which is wholly independent of any confession made by the defendants. Such evidence, however, may be circumstantial and need not include proof of the identity of the person who caused the death. (emphasis added)

Instruction No. 18 states the corpus delicti rule. *See* OUJI–CR–815; 21 O.S.1981, § 693.

 In *Fontenot,* 881 P.2d at 77–78, this Court eliminated the corpus delicti rule and adopted exclusively the *Opper* standard, which requires confessions to be supported by substantial independent evidence which tends to establish their trustworthiness. The *Fontenot* court noted that the uniform in-

**41.** Instruction No. 18 mirrors OUJI–CR–815.

structions must be prospectively altered. *Id.* at 80, n. 15. To conform to 21 O.S.1981 § 693, OUJI–CR–815 has been altered and only the highlighted portion above shall be given. *Id.* As a result, OUJI–CR–814 [42] is to be given in all cases in which a defendant has given a properly admitted extra-judicial confession. *Id.*

██ Hammon correctly states the trial court failed to instruct the jury that his confession must be substantially corroborated by independent evidence before considering his confession as evidence of guilt of murder. However, we have held where the record contains corroborating evidence, failure to give the corroborating instruction does not result in reversible error. *See Shelton,* 793 P.2d at 876; *Maxwell v. State,* 742 P.2d 1165, 1168 (Okl.Cr.1987); *Smith v. State,* 727 P.2d 1366, 1371 (Okl.Cr.1986), *cert. denied,* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987).

In the instant case there was ample evidence corroborating Hammon's confession. The medical examiner established the death of Gene Slape. Patrick White testified he saw Hammon and Jones together in the stolen getaway car driving erratically in the vicinity of Truck 'N Things on the day of the homicide. David Stewart, William Munson and Daniel Johnson saw two black males matching the description of Hammon and Jones in the store and in the vicinity of Truck 'N Things at the time of the crime. Jackie Alexander testified she saw Hammon and Jones with car speakers and car spinners shortly after the robbery. Hammon asked Alexander to hide a black bag containing two guns. The guns, merchandise and money were recovered by the police. The merchandise and money were found in the apartment where Hammon and Jones were arrested. Lastly, Bradley Slape identified Hammon as the man who pointed a gun at his head

during the robbery/homicide. This evidence sufficiently corroborated Hammon's confession. Because Hammon's confession was sufficiently corroborated, the jury was free to consider it as evidence of guilt. Accordingly, no error occurred.

██ Second, Hammon argues the trial court erred in failing to submit his requested instruction on second degree "depraved mind" murder. We addressed a similar argument in *Freeman,* 876 P.2d at 286. In *Freeman,* this Court held to be entitled to instructions on Murder in the second degree, the trial court must find that sufficient evidence was presented to support the conclusion the homicide was perpetrated without a design to effect death. *Id. See also,* 21 O.S.1981, § 701.8(1).

The evidence presented in the instant case was that Hammon and Jones entered Truck 'N Things with the intent to rob the store and carried out their plan. During the robbery, Jones shot and killed Gene Slape. This evidence does not support an instruction that Hammon's acts were "without any premeditated design to effect death." 21 O.S. 1981, § 701.8. A design to effect death is inferred from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed. *Freeman,* 876 P.2d at 287; 21 O.S.1981, § 702. Furthermore, a design to effect death sufficient to constitute murder can be formed in an instant. *Freeman,* 876 P.2d at 287; 21 O.S. 1981, § 703. As we stated in *Freeman,* "[i]n felony murder prosecutions the underlying felony suffices as proof of intent to take away human life so that [intent] was proven when the State established his intent to rob...." *Id. See also McAlpine v. State,* 634 P.2d 747, 749 (Okl.Cr.1981); *Wade v. State,* 581 P.2d 914, 916 (Okl.Cr.1978).

Because Hammon confessed he intended to rob Truck 'N Things, such evidence suffi-

---

**42.** OUJI–CR–814 states:
Should you find that the confession was made by the defendant and was made freely and voluntarily and in compliance with the rules of law set forth above, then you are instructed: a confession alone does not justify a conviction unless it is corroborated, that is, confirmed and supported by other evidence of the material and basic fact or facts necessary for the commission of the offense charged. Unless you find that the confession, if made, is corroborated, you must disregard it.

ciently proved Hammon's intent. Accordingly, the trial court did not abuse its discretion in failing to instruct on Murder in the second degree since such an instruction was not warranted. *Freeman*, 876 P.2d at 287.

▪ Lastly, Hammon argues the trial court erred in giving a flight instruction. *Kamees v. State*, 815 P.2d 1204 (Okl.Cr.1991). In *Kamees*, 815 P.2d at 1206, the appellant argued it was error to give a flight instruction because the act of running away completed the element of "carrying away" for grand larceny. This Court agreed, but found the error harmless. *Id.* at 1207.

As in *Kamees*, the flight instruction in this case was superfluous. To find Hammon guilty of robbery the jury had to find he carried away merchandise. Under the facts of this case the carrying away was completed when Hammon ran from the store with the car speakers and car spinners. The consideration of this same evidence in the context of flight could not change in any way the jury's fundamental determination of guilt. *Kamees*, 815 P.2d at 1207. Accordingly, we find the erroneous flight instruction does not require reversal. *Id. See also Cole v. State*, 766 P.2d 358, 360 (Okl.Cr.1988); *Box v. State*, 541 P.2d 262, 266 (Okl.Cr.1975); *Richmond v. State*, 456 P.2d 897, 901 (Okl.Cr.1969).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In his twenty-second proposition of error Hammon contends he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Hammon argues counsel's opening statement conceding Hammon's presence at the store during the robbery in which Eugene Slape was killed and focusing on punishment was ineffective assistance.[43]

▪ To successfully prove ineffective assistance of counsel, Hammon must satisfy the two-prong test enunciated in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show: (1) that defense counsel's performance was deficient, which requires showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by the deficient performance, which requires showing that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

In *Lockhart v. Fretwell*, —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Court stated that the "touchstone of an effective assistance of counsel claim is the fairness of the adversary proceeding". *Id.* at ——, 113 S.Ct. at 843, 122 L.Ed.2d at 189. A mere showing that a conviction would have been different but for counsel's errors would not suffice to sustain a Sixth Amendment claim. *Id.* Unreliability or unfairness does not result unless the ineffectiveness of counsel deprives the defendant of a substantial or procedural right to which the law entitles him. *Id.* at ——, 113 S.Ct. at 844, 122 L.Ed.2d at 191.

▪ "In reviewing claims of ineffectiveness, this Court indulges in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Malone v. State*, 876 P.2d at 713. Hammon must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. *Id.*

▪ From the record, Hammon cannot meet his burden. Knowing the evidence against his client, counsel sought to minimize Hammon's role in the robbery focusing on his encounter with Bradley Slape. Counsel emphasized Hammon had every opportunity to shoot Bradley and did not. Counsel further emphasized that Hammon did not shoot Eugene Slape. Counsel vehemently argued Hammon's case. He filed numerous pre-trial

---

**43.** Hammon also claims counsel was ineffective when he failed to request an *Enmund/Tison* instruction in second stage. Inasmuch as this case must be remanded for resentencing, we need not address such claim.

motions and preserved rulings for review by this Court. We find that counsel exercised the skill, judgment and diligence of a competent defense attorney under the circumstances when he employed the strategy to concede Hammon's presence at the crime in opening statement and focus on punishment and culpability. Accordingly, this proposition is without merit.

Having reviewed the allegations of error raised by Hammon, we find that his conviction for Murder in the first degree shall be **AFFIRMED**. Hammon's Judgments and Sentences for Feloniously Pointing a Weapon, After Former Conviction of Two or More Felonies and Possession of a Firearm, After Former Conviction of a Felony are **AFFIRMED**. Hammon's Judgments and Sentences for Possession of a Stolen Vehicle, After Former Conviction of Two or More Felonies, Knowingly Concealing Stolen Property, After Former Conviction of Two or More Felonies and Using a Weapon in the Commission of a Crime, After Former Conviction of Two or More Felonies are **REVERSED** and **REMANDED** with instructions to **DISMISS**. Hammon's sentence of death is **REVERSED** and this case is **REMANDED** to the District Court to conduct a new sentencing hearing.

CHAPEL, V.P.J., and LANE, J., concur.

JOHNSON, P.J., and LUMPKIN, J., concur in part/dissent in part.

JOHNSON, Presiding Judge, concurring in part, dissenting in part.

I concur with the Court herein as it relates to the finding of guilt, but I dissent as to the reversal and remanding this case for resentencing. The Court has based its resentencing on what we have come to know as "reverse *Witherspoon* excludables".

Courts have long had a problem with the automatic exclusion of jurors in a death penalty case. The Supreme Court originally said that one who "automatically" would vote against the imposition of a death penalty would be excluded from a jury panel for cause. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Supreme Court wanted to clarify the *Witherspoon* decision, and did so some years later in the case of *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). The Court held that a juror is to be removed from the jury panel for cause when he or she would automatically vote for the death penalty and fail to consider the aggravating or mitigating circumstances.

I agree with the State in this regard that counsel did get to ask the jurors whether they would follow the instructions regarding guilt or innocence, as well as punishment. Any irregularity was cured by this question. I would, therefore, affirm not only the judgment, but the sentence herein.

LUMPKIN, Judge, concurring in part, dissenting in part.

I concur in the Court's decision affirming the conviction for Murder in the First Degree and remanding for resentencing, and reversing to dismiss the conviction for Using a Weapon in the Commission of a Crime. However, I find the application of 21 O.S.Supp.1987, § 11 to the convictions of possession of a Stolen Vehicle and Concealing Stolen Property inconsistent with the analysis of the other crimes evidence pursuant to 12 O.S.1981, §§ 2403, 2404, and the facts in this case. If the acts are separate and independent for one purpose, they are separate and independent for both. Under the analysis in the opinion, a person who steals property could never be convicted of concealing that same property, regardless of how far it was transported or what actions were taken to conceal it. I believe this analysis goes far afield of the intent of Section 11. I would affirm both the Possession of Stolen Vehicle and Concealing Stolen Property convictions due to the evidence establishing these offenses were separate offenses based on the acts of the defendant.

I also disagree with the Court's analysis of the report by A. Eugene Reynolds. This

report is not a part of the record on appeal and this Court should not discuss what might have been if, in fact, it was a part of the records. The Motion to Supplement should be denied, period.